Thomas SLEWEON, M.D.,
Appellant–Plaintiff,

v.

BURKE, MURPHY, CONSTANZA & CUPPY, a Partnership or other Business Association; and Frederick M. Cuppy, George W. Carberry, and Kathryn Schmidt, Individually, Appellees–Defendants.

No. 45A03–9808–CV–343.

Court of Appeals of Indiana.

May 24, 1999.

---

Susan LaCava, Susan LaCava, S.C., Madison, Wisconsin, Attorney for Appellant.

G. Ronald Heath, Michael D. Ramsey, Johnson, Smith, Pence, Densborn, Wright & Heath LLP, Indianapolis, Indiana, Attorneys for Appellees.

## OPINION

DARDEN, Judge

### STATEMENT OF THE CASE

Thomas Sleweon, M.D., appeals the trial court's grant of summary judgment in favor of Burke, Murphy, Constanza and Cuppy, a partnership or other business association, and Frederick Cuppy, George Carberry and Kathryn Schmidt, individually, (collectively "Burke"), in Dr. Sleweon's legal malpractice action.

We affirm.

### ISSUE

Whether the trial court erred in granting summary judgment in favor of Burke.

### FACTS

Dr. Alexander Stemer located his infectious disease practice in Lake County in 1976. He eventually hired other doctors and established Medical Specialists, Inc. In 1993, at Methodist Hospital's request, Medical Specialists located and hired an African–American doctor, Thomas Sleweon.[1] Dr. Sleweon and Medical Specialists signed an employment contract which contained the following covenant not to compete:

> The parties agree that for a period of two (2) years from and after termination of this Agreement, the Doctor covenants and agrees not to own, manage, operate, control or be employed by, participate in or render services to or be connected in any manner with the ownership, management, operation or control of any medical practice, whether said medical practice be maintained as an individual proprietorship, joint venture, partnership, private foundation, corporation or otherwise for a period of two (2) years from the date of termination, and within a radius of ten (10) miles of the hospitals at which Corporation renders patient services.

(R. 592).

Dr. Sleweon began practicing infectious disease medicine with Medical Specialists in July 1993 and was immediately introduced to the practice's existing patients and referring physicians.[2] Dr. Sleweon spent one-half of his time at Methodist Hospital in Gary and the other half at hospitals in Lake, LaPorte and Porter counties.

After several months, Dr. Sleweon became dissatisfied with Medical Specialists' call schedule. He subsequently submitted his resignation to Dr. Stemer. Dr. Sleweon told Dr. Stemer that he wanted to open a practice in Chicago, and Dr. Stemer hired Dr. Andoh to replace him. On June 30, 1994, the day that his employment agreement with Medical Specialists expired, Dr. Sleweon filed a complaint for declaratory judgment requesting the trial court to declare the covenant not to

---

[1]. Medical Specialists hired a recruiting firm and spent $26,000 in its effort to locate and hire Dr. Sleweon.

[2]. A successful infectious disease practice requires patient referrals from other physicians.

compete found in the employment agreement to be unenforceable.

On July 2, 1994, Dr. Sleweon announced his intention to remain in northwestern Indiana and accepted an infectious disease position with Methodist Hospital. Dr. Sleweon's employment agreement with Methodist provided him with an office in Gary and allowed him to treat patients at other hospitals where Medical Specialists also provided services. Medical Specialists responded to Dr. Sleweon's complaint for declaratory judgment with a request for a preliminary injunction enjoining Dr. Sleweon from practicing medicine as set forth in the covenant not to compete. In the meantime, despite the fact that two Medical Specialists physicians were available for referrals from Methodist doctors, no consultations were requested of either physician. Rather, Dr. Sleweon received every referral.

The trial court held a trial on Dr. Sleweon's complaint and Medical Specialists' request for a temporary injunction on August 18, 1994. Thereafter, the court found that the terms of Dr. Sleweon's covenant not to compete were unreasonable and, therefore, unenforceable. Accordingly, the trial court denied Medical Specialists' motion for an injunction. Medical Specialists filed its brief in an interlocutory appeal on January 19, 1995. Burke mistakenly calendared the appeal as that of a final order rather than an interlocutory order and failed to file its brief within 10 days as required by Ind. Appellate Rule 8.2(B). When Burke realized its mistake, it filed a motion for permission to submit a late brief which it had already written. This court, however, denied Burke's motion.

In *Medical Specialists, Inc. v. Sleweon,* 652 N.E.2d 517 (Ind.Ct.App.1995), *trans. denied,* ("*Sleweon I* "), we noted that because Dr. Sleweon had failed to timely file an appellee's brief, we could reverse the trial court if Medical Specialists presented a prima facie case of error. *Id.* at 522, n. 4. However, we decided to exercise our discretion and decide the case on the merits. *Id.* After reviewing the record, we found that the facts were, for the most part, uncontroverted. We further found that, as a matter of law,[3] the covenant was reasonable and, therefore, enforceable. Specifically, we found that Medical Specialists demonstrated that 1) it had a legitimate interest worthy of protection; 2) the covenant was reasonable in terms of time, space and the types of activity or conduct prohibited; and 3) the covenant not to compete did not violate public policy because, despite Dr. Sleweon's argument to the contrary, the evidence did not show that Gary citizens would be harmed by enforcement of the covenant. We therefore reversed and remanded the case to the trial court for proceedings consistent with our opinion.

On October 24, 1995, the trial court issued an amended judgment wherein it found that the covenant not to compete was reasonable and enforceable and therefore ordered Dr. Sleweon to "take all necessary action to sever any existing physician-patient relationships with any patients within the aforedescribed Restricted Area proscribed by the covenant not to compete agreement, and to render no medical treatment to such patients beginning five (5) days after the entry of this Judgment." (R. 1327). The court also ordered Dr. Sleweon to file a written report with the court disclosing "all actions and efforts taken by him to fully comply with all terms of [the] Judgment ... no later than ten (10) days from the entry of [the] Judgment." (R. 1327).

Thereafter, Dr. Sleweon, by counsel, filed a report with the trial court wherein he stated as follows:

1. SLEWEON has sent letters to all patients advising that by virtue of this Court's order, SLEWEON could no longer practice. Patients were referred back to their referring or family physician. Patients were also advised that in case of emergency, they should go to the nearest emergency room.

2. SLEWEON's answering service is advising patients of SLEWEON's inability to practice and advising patients to contact their family physicians.

---

**3.** The ultimate determination of whether a non-competition covenant is reasonable is a question of law. *Raymundo v. Hammond Clinic Ass'n,* 449 N.E.2d 276, 280 (Ind.1983).

3. Patients were advised their records are available through Lynette at Medical Management Data Services.... The patient's file will be sent to the physician of the patient's choice....

(R. 1408–09).

Despite Dr. Sleweon's actions, apparently several of his patients either did not receive Dr. Sleweon's written notice or were unable to make timely arrangements to transfer their medical records. On November 2, 1995, two newspaper articles alleged that when Dr. Sleweon closed his office, "he left no forwarding telephone number, mailing address or directions for how patients could retrieve their medical records." (R. 1345, 1347). As a result of the articles, a representative from the Attorney General's office contacted Dr. Sleweon who "had to defend the accusations made in [the] articles to clear [his] name...." (R. 1343).

In December 1996, Dr. Sleweon filed a legal malpractice complaint against Burke, the law firm and individual attorneys who represented him in *Sleweon I*. Specifically, Dr. Sleweon alleged that Burke breached its duty of reasonable care when it failed to timely file an appellate brief in *Sleweon I*, and that this breach "proximately caused damage to Dr. Sleweon, who would not have been enjoined if the Court of Appeals had his brief when it decided the case." (R. 1432).

Dr. Sleweon further alleged that Burke breached its duty of care when it failed to advise the trial court of an Indiana Administrative Code provision governing the discontinuation of a medical practice. According to Dr. Sleweon, Burke's failure to assure that Dr. Sleweon's practice was shut down in accordance with the code provision caused harm to Dr. Sleweon's professional reputation.

In August 1997, Burke filed a motion for summary judgment wherein it alleged that it was entitled to judgment as a matter of law because its failure to 1) timely file an appellate brief in *Sleweon I*, and 2) advise the trial court of the administrative provision regarding the discontinuance of a physician's practice was not the cause of any harm to Dr. Sleweon. Dr. Sleweon filed a cross-motion for summary judgment wherein he argued that he was entitled to judgment as a matter of law "on the issue of liability." (R. 122). The trial court denied Dr. Sleweon's motion and granted Burke's. Dr. Sleweon now asks us to reverse both the trial court's grant of Burke's motion and the denial of his.

### DECISION

In our review of the trial court's grant of summary judgment, we apply the same standard of review as the trial court. *Crist v. K-Mart Corp.*, 653 N.E.2d 140, 142 (Ind.Ct.App. 1995), *reh'g denied.* When the designated evidentiary material shows that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law, summary judgment shall be granted. Ind. Trial Rule 56(C); *Id.* We will affirm the trial court's grant of summary judgment on any theory consistent with the designated evidence in the record. *Crist*, 653 N.E.2d at 142. Because the facts before us are undisputed, we need only determine whether the trial court correctly applied the law to the undisputed facts.

 To prove a legal malpractice claim, the plaintiff-client must show: 1) employment of the attorney (the duty); 2) failure of the attorney to exercise ordinary skill and knowledge (the breach); 3) proximate cause (causation); and 4) loss to the plaintiff (damages). *Picadilly, Inc. v. Raikos*, 582 N.E.2d 338, 344 (Ind.1991). To prove causation and the extent of harm in a legal malpractice case, the client must show that the outcome of the underlying litigation would have been more favorable but for the attorney's negligence.[4] *Id.*

### A. Failure to Timely File an Appellate Brief in Sleweon I

██ Dr. Sleweon argues that the trial court should have granted his summary judgment motion and denied Burke's because this court would have affirmed the trial court as

---

**4.** This proof typically requires a " 'trial within a trial.' " *Id.* (citing, 2 R. Mallen & J. Smith, *Legal*

*Malpractice*, 641 (3d ed.1989)).

to the unreasonableness and unenforceability of the covenant if Burke had timely filed Dr. Sleweon's appellate brief in *Sleweon I*. We disagree.

We have reviewed the appellate brief which Burke wrote but failed to timely file in *Sleweon I. See* R. 209–263. In this brief, Dr. Sleweon makes two arguments regarding the covenant which he claims show that it was unreasonable and therefore unenforceable. Specifically, he contends that "the geographic scope of the covenant is too broad and it is unreasonable in its affect on the public." (R. 225).

Our review of *Sleweon I* reveals that we considered and addressed both of these arguments even though we did not have Dr. Sleweon's brief. First, as to the geographic scope of the covenant, we found that the "covenant's prohibition against Dr. Sleweon practicing within a ten-mile radius of each hospital served by Specialists to be a reasonable effort to protect" the continued success of Medical Specialists, a legitimate interest worthy of protection. *Sleweon I*, 652 N.E.2d at 524. Second, as to the covenant's effect on the public, we found that the citizens of Gary would not be harmed by the enforcement of the covenant and concluded that the covenant was neither injurious to the public nor void as against public policy.

Because the outcome of the underlying litigation would not have been more favorable but for Burke's alleged negligence, Burke's failure to timely file an appellate brief in *Sleweon I* was not the cause of harm to Dr. Sleweon. The trial court properly applied the law and did not err in denying Dr. Sleweon's motion and granting Burke's.

■ In his reply brief in this appeal, Dr. Sleweon, for the first time, contends that he "would have prevailed if his 'salesman route' theory had been presented to this court." Dr. Sleweon's Reply Brief, p. 6. However, new arguments made in a reply brief are inappropriate and will not be considered on appeal. *Crist*, 653 N.E.2d at 144. Further, our review of the *Sleweon I* appellate brief

reveals no mention of this "salesman route" theory. Dr. Sleweon cannot raise an issue which was available to him in his first appeal in this second appeal. *See Mafnas v. Owen County Office of Family and Children*, 699 N.E.2d 1210 (Ind.Ct.App.1998), *reh'g denied.*

**B. *Failure to Advise the Trial Court of the Administrative Code Provision Governing the Discontinuation of a Physician's Practice***

On October 24, 1995, the trial court gave Dr. Sleweon five days to take the "necessary action to sever any existing physician/patient relationships" which violated the covenant not to compete. (R. 1327). Dr. Sleweon sent letters to his patients; however, apparently several of the patients either failed to receive the letters or were unable to make timely arrangements to transfer their medical records, resulting in adverse publicity which caused harm to Dr. Sleweon's professional reputation.

In his summary judgment motion, Dr. Sleweon argued that Burke committed legal malpractice when it failed to advise the trial court of 844 IAC 5–2–16(b) which provides in pertinent part as follows:

> A practitioner . . . upon discontinuation of the practice of medicine . . . shall notify all of his/her active patients in writing, or by publication once a week for three (3) consecutive weeks in a newspaper of general circulation in the community, that he/she intends to discontinue his/her practice of medicine. . . .

■ Dr. Sleweon now argues that the trial court erred in denying his summary judgment motion and granting Burke's because the outcome of the underlying litigation would have been more favorable but for Burke's alleged negligence.[5] Specifically, Dr. Sleweon contends that if Burke had tendered this provision to the trial court, the "court would have allowed Dr. Sleweon a longer amount of time to give notice to his patients," thereby averting negative publicity. Dr. Sleweon's Reply Brief, p. 16. In support of his contention, Dr. Sleweon ar-

---

5. Dr. Sleweon submitted an affidavit of attorney Brian Deppe wherein Deppe opined that Burke's failure to inform the court of 844 IAC 5–2–16(b) "fell below the standard of care required of them. . . ." (R. 1350).

gues that 844 IAC 5–2–16(b) imposes a reasonable time requirement as to written notice and that five days was not reasonable.

Assuming without deciding that the provision imposes such a requirement, Dr. Sleweon has not shown that, as a matter of law, five days was not a reasonable time based upon the facts and circumstances of this case. Specifically, Dr. Sleweon should have been enjoined from practicing medicine pursuant to the terms of the restrictive covenant as of the trial court's first order on October 24, 1994. Instead, he was allowed to continue his practice during the appeal of *Sleweon I* and until the trial court issued its amended order in October 1995. Under these circumstances, Dr. Sleweon was given a reasonable time to close his practice. It follows, therefore, that Burke's failure to tender this provision was not, as a matter of law, the proximate cause of the harm to Dr. Sleweon's personal reputation. The trial court properly applied the law and did not err in denying Dr. Sleweon's motion and granting Burke's.

Affirmed.

SHARPNACK, C.J., and ROBB, J., concur.