# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 06-2976

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

EDWIN W. BLINN, JR.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 04 CR 126—**David F. Hamilton**, *Judge.*

ARGUED FEBRUARY 8, 2007—DECIDED JUNE 13, 2007

Before RIPPLE, MANION, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Edward Blinn, Jr., owner of
Blinn Auto Sales, sold five cars to members of a drug-
trafficking organization to assist in concealing the pro-
ceeds of the group's marijuana sales. In exchange for
his assistance, Blinn was paid $2000 to $5000 per car.
Blinn's side business did not go unnoticed, and on October
6, 2004, a grand jury returned a superseding indict-
ment charging him with conspiring to launder monetary
proceeds (Count Four) and laundering the monetary
proceeds of the unlawful distribution of marijuana (Count
Five). *See* 18 U.S.C. §§ 1956(a)(1)(B)(i) and (a)(2). Blinn
negotiated a plea agreement with the government pursu-
ant to Federal Rules of Criminal Procedure 11(c)(1)(A) and

11(c)(1)(C) and pleaded guilty to Count Four of the indictment; Count Five was dismissed. The agreement called for a sentence of twelve to twenty months' imprisonment, which was well below the statutory maximum of twenty years, *see* 18 U.S.C. § 1956(a)(1), but it was silent as to any term of supervised release. The district court accepted the plea and was bound by the sentencing recommendation contained in the plea agreement. *See* Fed. R. Crim. P. 11(c)(1)(C) ("[T]he plea agreement may specify that an attorney for the government will . . . agree that a specific sentence or sentencing range is the appropriate disposition of the case, [and] such a recommendation or request binds the court once the court accepts the plea agreement . . . .").

Blinn was ultimately sentenced to sixteen months' imprisonment, ordered to pay a fine of $40,000, and placed on supervised release for three years.[1] In addition to these terms, the district court ordered, as a condition of the supervised release, that Blinn be confined to his home with electronic monitoring for twelve months, except for purposes of employment and other activities approved by Blinn's probation officer. Blinn did not object to the stated terms of his sentence before it was imposed or move to withdraw his plea agreement.

He now appeals, arguing that his sentence of sixteen months' imprisonment to be followed by twelve months of home confinement violates the terms of his plea agreement by exceeding the high end of the sentencing range set forth in his plea agreement by four months. In making this argument, Blinn directs us to section 5F1.2 of the

---

[1] Section 5D1.1(a) of the United States Sentencing Guidelines (2005) advises the district courts to impose a period of supervised release to follow a defendant's term of imprisonment when that term is greater than one year.

United States Sentencing Guidelines, which advises that home detention may be imposed as a condition of probation or supervised release, "but only as a substitute for imprisonment." This provision, Blinn contends, prevents the district court from ordering him to a period of home detention that, when combined with his actual term of imprisonment, exceeds the maximum sentence of twenty months' imprisonment provided for in his plea agreement. He maintains that his position finds support in authority from the Second and Fifth Circuits. *See United States v. Ferguson*, 369 F.3d 847, 850-52 (5th Cir. 2004) (finding that the district court exceeded the two-year statutory maximum term of incarceration when it sentenced the defendant to twenty-three months' imprisonment and six months of home detention); *United States v. Leaphart*, 98 F.3d 41, 43 (2d Cir. 1996) (noting that because the magistrate judge had sentenced the defendant to the statutory maximum term of one year of imprisonment, she could not also subject him to home detention during his supervised release). We note that, unlike these cited cases, Blinn's sentence of sixteen months of imprisonment combined with his twelve months of home confinement did not exceed the applicable statutory maximum of twenty years. *See* 18 U.S.C. § 1956(a)(1).

However, we need not entertain the merits of this appeal because of the following waiver provision in Blinn's plea agreement:

> Blinn expressly waives his right to appeal on any ground his conviction of the offense charged in Count One of the Superseding Indictment. *Blinn also expressly waives his right to contest or seek review of the sentence on appeal on any ground, including the right to appeal the sentence* conferred by Title 18, United States Code, Section 3742.

Plea Agmt. at 3-4 (emphasis added). We will enforce a plea agreement's appellate waiver if its terms are clear and

unambiguous and the record shows that the defendant knowingly and voluntarily entered into the agreement. *United States v. Jemison*, 237 F.3d 911, 917 (7th Cir. 2001).

Blinn contends first that the terms of his waiver were neither clear nor unambiguous because it refers to a count that was not part of the guilty plea or plea agreement (Count One). The waiver provision's reference to Count One instead of Count Four, however, is no more than a scrivener's error that appears to be the result of the transcription of an incorrect number. The plea agreement begins by acknowledging that "Blinn will enter a plea of guilty to Count Four" and goes on to make six additional references to this count as the appropriate offense charged. At the change of plea hearing, Blinn indicated his understanding that he had been charged in Count Four of the superseding indictment with conspiracy and that he agreed to plead guilty to that count. In addition, at no point during the proceedings did Blinn express any confusion as to whether the appellate waiver covered his conviction under Count Four. In this context, we are hard-pressed to find that a single typographical error in Blinn's plea agreement rises to the level of ambiguity that warrants disregarding Blinn's waiver of his right to appeal.

Next, Blinn urges that his appeal be allowed to proceed despite any waiver on his part because, he argues, he did not get the "benefit of his guaranteed bargain." But, the terms of the plea agreement and the transcript of the proceedings show that Blinn received exactly what he bargained for—a term of imprisonment not to exceed twenty months. The agreement plainly states, "should the Court accept this plea agreement, *Blinn will be sentenced to a sentence within the range of 12 to 20 months' imprisonment* on Count Four . . . ." Plea Agmt. at 2 (emphasis added). During the plea colloquy, Blinn also

confirmed his understanding that if the district court accepted the plea agreement, it was committed "to giving [Blinn] a sentence that is *at least 12 months in prison, but no more than 20 months in prison* [.]" Change of Plea Tr. at 9 (emphasis added). At Blinn's sentencing hearing, this range of imprisonment was repeated multiple times by the judge and the government's attorney before Blinn's sentence was finally imposed.

It is apparent from the above discussion that the parties bound by the plea agreement—Blinn, the government, and the district court per Rule 11(c)(1)(C)—were all in agreement that Blinn, in exchange for pleading guilty to Count Four, would serve a sentence between twelve and twenty months *in prison*. In addition, there was no question that the sentencing judge would set the terms of Blinn's supervised release. Because the plea agreement made no recommendation as to this aspect of Blinn's sentence, during the plea colloquy, the sentencing judge sought and received Blinn's acknowledgment that it was within the judge's discretion to decide the length and conditions of the supervised release. *See id.* In addition, as we noted earlier, though given the opportunity, Blinn made no objections to the district court's conditions of his supervised release before it was imposed. Therefore, Blinn's argument that he was somehow deprived of the benefit of his bargain provides no basis for us to make an exception to his appellate waiver and consider the merits of his case.

Accordingly, Blinn's appeal is DISMISSED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*