# FOR PUBLICATION



FILED

May 07 2014, 9:28 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**PHILIP E. KALAMAROS**
Hunt Suedhoff Kalamaros, LLP
St. Joseph, Michigan

ATTORNEYS FOR APPELLEE:

**SCOTT A. WEATHERS**
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SHANE BEAL and THE BAR PLAN MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
| Appellants-Defendants, | ) | |
| | ) | |
| vs. | ) | No. 27A03-1306-PL-235 |
| | ) | |
| EDWIN BLINN, JR., | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE GRANT SUPERIOR COURT
The Honorable Thomas Newman, Jr., Special Judge
Cause No. 27D03-0705-PL-197

**May 7, 2014**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Shane Beal (Beal),[1] appeals the trial court's denial of his motion for summary judgment, concluding that a genuine issue of material fact exist as to whether Beal's representation of Appellee-Plaintiff, Edwin Blinn, Jr. (Blinn), in a federal criminal case constituted legal malpractice.

We affirm.

## ISSUES

Beal raises three issues on appeal, which we consolidate and restate as the following two issues:

(1) Whether the trial court abused its discretion when it denied Beal's motion to strike Blinn's expert evidence; and

(2) Whether the trial court erred in determining that a genuine issue of material fact exists in a legal malpractice case where the conduct of an attorney resulted in the indictment of his client and subsequent voluntary guilty plea.

## FACTS AND PROCEDURAL HISTORY

The facts of the instant case have been analyzed in several opinions issued by this court and our federal counterpart. *See U.S. v. Blinn,* 490 F.3d 586, 588 (7th Cir. 2007); *Beal v. Blinn*, No. 27A05-0802-CV-78 (Ind. Ct. App. Oct. 23, 2008); *Blinn v. Law Firm of Johnson, Beaman, Bratch, Beal and White*, LLP, 948 N.E.2d 814 (Ind. Ct. App. 2011);

---

[1] Although the Bar Plan Mutual Insurance Co. (Bar Plan) was a defendant before the trial court, they did not appeal the trial court's ruling. Pursuant to Indiana Appellate Rule 17, a party of record in the trial court shall be a party on appeal; therefore, the Bar Plan will appear in the caption of this case.

*Blinn v. Kammen*, No. 27A04-1008-PL-532 (Ind. Ct. App. June 30, 2011).  This most recent installment in a never-ending legal malpractice saga focuses squarely on the issue at the heart of the dispute:  Beal's actions and conduct during his representation of Blinn in a federal drug and money laundering investigation.

In early 2003, Beal represented Blinn in a criminal matter which was being investigated by the Federal Bureau of Investigation (FBI).  During the investigation, Beal allowed Blinn to enter into a proffer agreement with the United States Government, which, by its express terms, anticipates and requires multiple interviews and debriefings. In exchange for Blinn's truthful cooperation, the Government would allow Blinn to plead guilty to a misdemeanor and agreed not to use Blinn's statements against him if the Government later decided to file more serious charges.  On April 22, 2003, at the conclusion of the first proffer session, Beal advised that Blinn had more information and the proffer session would reconvene on a different day.

Between April 22, 2003 and June 2003, federal agents attempted to contact Beal on different occasions to schedule a follow-up proffer session with Blinn.  On or about September 9, 2003, federal agents contacted Beal's office again.  After getting no response to their phone calls, the Agents travelled to Marion, Indiana where they cornered Beal at the court house.  When confronted by the federal agents, Beal declared that "Blinn was no longer interested in cooperating with the [G]overnment." (Appellant's App. p. 62).  The Government indicted Blinn on a federal felony money laundering charge.

From April 22, 2003 to September 2003, Beal did not inform Blinn of the FBI's requests for an additional interview, nor did Beal inquire after Blinn's willingness to continue to cooperate with the FBI. Instead, Beal only informed Blinn of the FBI's requests after the agents' visit on September 9, 2003.

After the indictment, Blinn hired attorney Rick Kammen (Kammen) to serve as his lead counsel. Because the proffer agreement had collapsed and the immunity attached to the agreement had dissolved, the Government sought to introduce Blinn's statements against him. Kammen objected, but for unspecified strategic reasons, Kammen declined to call Beal as a witness at an initial hearing on the admissibility of Blinn's proffer statements. The federal district court ruled Blinn's statements admissible. At a subsequent hearing, Kammen requested the court to revisit the proffer and he called Beal as a witness. Despite Beal testifying at length about his representation of Blinn and the proffer agreement, the court declined to change its ruling. Ultimately, Blinn, now represented by attorney Robert W. Hammerle (Hammerle), negotiated a plea agreement with the Government, pleading guilty to a felony of conspiring to launder monetary proceeds in exchange for a sentence of twelve to twenty months' imprisonment. The district court accepted the plea agreement and sentenced Blinn to sixteen months' imprisonment with three years of supervised release, including twelve months of home confinement.

On April 26, 2007, Blinn filed a *pro se* complaint against Beal and the law firm of Johnson, Beaman, Bratch, Beal & White, LLP (Law Firm) for legal malpractice. Because Blinn omitted to sign the complaint, the Law Firm filed a motion to dismiss. On

4

November 1, 2007, Blinn, represented by an attorney, filed an amended complaint. Thereafter, Beal moved to dismiss the complaint because service of process had not been perfected. The trial court denied the motions. On interlocutory appeal, we affirmed the trial court. *See Beal v. Blinn*, 27A05-0802-CV-78 (Ind. Ct. App. Oct. 23, 2008).

On November 6, 2009, in an effort to settle the suit, Blinn dismissed, without prejudice, the Law Firm from his suit and continued his action against Beal. However, settlement negotiations with Beal proved unsuccessful and Blinn moved to reinstate the Law Firm, to which the Law Firm objected. On February 24, 2010, the trial court denied Blinn's motion for reinstatement; we affirmed the trial court's decision on April 29, 2011. *See Blinn v. Law Firm of Johnson, Beaman, Bratch, Beal and White, LLP*, 948 N.E.2d 814, 816 (Ind. Ct. App. 2011).

Meanwhile, Blinn also pursued his legal malpractice claim against Kammen and Kammen's law firm, asserting professional negligence arising out of Kammen's representation in Blinn's federal criminal prosecution. *See Blinn v. Kammen*, 27A04-1008-PL-532 (Ind. Ct. App. June 30, 2011). Kammen moved for summary judgment, which was granted by the trial court. We affirmed on appeal, concluding:

> It appears Blinn's only specific allegation of malpractice is that Kammen did not call Beal to testify at the initial hearing regarding whether the government could introduce Blinn's proffer statements.
>
> . . .
>
> But Kammen eventually *did* put Beal on the stand, and the information Blinn now asserts was concealed from the criminal court by Kammen's ineffective assistance, was in fact not concealed but placed before the court.
>
> . . .

5

> As Blinn did not provide any evidence Kammen's alleged malpractice was the proximate cause of the injury Blinn asserts, Kammen was entitled to summary judgment[.]

*Id.*, slip op. p. 3 (internal citations omitted).

On September 30, 2011, Defendant, Bar Plan Mutual Insurance Co. (Bar Plan), moved for summary judgment, maintaining that the Law Firm's insurance policy does not provide coverage to Beal for the claims asserted by Blinn. On May 4, 2012, Blinn filed a response, together with a cross-motion on estoppel. On May 18, 2012 and June 11, 2012 respectively, Blinn filed a motion for partial summary judgment and a request for summary adjudication on estoppel. On July 19, 2012, Beal filed a motion for summary judgment and motion to strike the testimony of Blinn's expert witness. Thereafter, the Bar Plan filed another motion for summary judgment "on the issues of public policy and [Blinn's] affirmative defenses." (Appellant's App. p. 429). On August 14, 2012, Blinn filed a motion to strike the Bar Plan's motion and, three days later, also responded to Beal's motion to strike.

On March 12, 2013, the trial court conducted a hearing on all pending motions. On April 12, 2013, the trial court issued its Order on Multiple Matters Heard on March 12, 2013, summarily denying all parties' respective motions. With regard to Beal's motion for summary judgment against Blinn, the trial court noted as follows:

> Despite all the facts that that [c]ourt assumes (without deciding) to be undisputed, the pleadings and Beal's own memorandum on summary judgment show the core factual issue that precludes summary judgment for Beal. As Beal notes, Blinn alleges that Beal failed to advise him "of a request by federal agents to interview Blinn following his initial proffer meeting in April 2003 . . . [and] Beal denied the allegations." That fact had

6

little to do with the underlying criminal proceedings; it has everything to do with Blinn's claim for relief in this case. Indiana's policy of preventing criminal defendants from benefiting from their criminal conduct does not affect that fact-issue because the criminal conviction resulting from Blinn's guilty plea is irrelevant. Instead, what matters is *Beal's* conduct because "the injury in such a situation 'is not a bungled opportunity for vindication, but a lost opportunity to minimize [Blinn's] criminal record." Accordingly, because the factual questions on this core issue remain squarely at issue, Beal's motion for summary judgment must be denied.

(Appellant's App. p. 26) (internal references omitted).

Beal now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

Beal contends that the trial court erred when it concluded that a genuine issue of material fact exists as to whether Beal's conduct during the federal investigation into Blinn's actions resulted in a harsher sentence than Blinn otherwise might have received.

I. *Motion to Strike Expert Testimony*

As we cannot review the trial court's summary judgment unless we establish what evidence the parties designated for our review, we first address Beal's contention that the trial court abused its discretion when it denied his motion to strike Blinn's expert testimony because the testimony was "based entirely on speculation." (Appellant's Br. p. 25). A trial court has broad discretion in granting or denying a motion to strike expert testimony. *Norfolk S. Ry. Co. v. Estate of Wagers,* 833 N.E.2d 93, 100 (Ind. Ct. App. 2005). We reverse a trial court's decision to admit or exclude evidence only if that decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* at 101. Further, the trial court's decision will not be reversed unless prejudicial error is clearly shown. *Id.*

7

Pursuant to Ind. Evidence Rule 702(a), expert testimony must convey knowledge that "will assist the trier of fact to understand the evidence or to determine a fact in issue." Evid. R. 702(a) assigns to the trial court a gatekeeping function of ensuring that an expert witness' testimony both rests on a reliable foundation and is relevant to the task at hand. *Howerton v. Red Ribbon, Inc.*, 715 N.E.2d 963, 966 (Ind. Ct. App. 1999). Knowledge admissible under the Rule must connote more than subjective belief or unsupported speculation. *Id.* Expert testimony must be supported by appropriate validation or good grounds based on what is known, establishing a standard of evidentiary reliability. *Lytle v. Ford Motor Co.*, 696 N.E.2d 465, 472 (Ind. Ct. App. 1998).

Here, Blinn introduced Hammerle, the attorney who negotiated his federal plea agreement, as his expert witness. Hammerle has been a criminal defense attorney for more than thirty-five years and is experienced in federal criminal litigation and proffer sessions. As successor counsel to Kammen and Beal in the underlying representation of Blinn, Hammerle was familiar with the facts surrounding the case. As such, he based his opinion on his education, training, and knowledge of the facts of the underlying case and applicable law.

In the designated testimony, Hammerle testified that during his conversations with federal agents after he commenced his representation of Blinn, it became clear that Blinn was offered a misdemeanor charge in exchange for his cooperation with the proffer session. In his opinion, Beal breached the legal standard of care by not understanding proffer sessions and unilaterally refusing the Government's requests for further

8

interviews. Hammerle noted that the subsequent admission at trial of Blinn's statements uttered during the proffer session made his criminal case indefensible.

Beal now contends that Hammerle's opinions are based on nothing more than speculation because of Hammerle's testimony that "in [thirty]-some years of practice, I don't believe I ever had a client in the federal system offered a misdemeanor." (Appellant's App. p. 374). Hammerle's response follows on the heels of a question about the "typical or average ordinary sentence for a federal misdemeanor with a guy who's got a DUI in his past, a range?" (Appellant's App. p. 374). Placing Hammerle's statement in the proper context, we conclude that Hammerle was touching on the federal sentencing guidelines, commenting that he typically represents defendants charged with crimes which warrant a higher sentencing range than a misdemeanor. It does not reflect—as Beal requests us to find—that Hammerle's experience is flawed and his opinions are based on speculation. Therefore, we find that the trial court properly denied Beal's motion to strike Hammerle's expert testimony.

## II. *Legal Malpractice*

### A. *Standard of Review*

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). A fact is material if its resolution would affect the outcome of the case, and an issue is genuine if a trier of fact is required to resolve the parties' differing accounts of the truth . . . , or if the undisputed facts support conflicting reasonable inferences. *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009).

In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* at 608. The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id.* When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id.*

We observe that, in the present case, the trial court did not enter findings of fact in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *Id.* However, such findings offer this court valuable insight into the trial court's rationale for its decision and facilitate appellate review. *Id.*

B. *Analysis*

Beal's main argument focuses on Indiana's public policy which bars a person convicted of a crime from imposing liability on others through a civil action for the results of his or her own criminal conduct. Because Blinn entered into a voluntary plea

10

agreement and accepted responsibility for his criminal conduct, he cannot now "seek to profit from [his] own criminality." (Appellant's Br. p. 17). Specifically, Beal maintains that Blinn's sentencing and fine arose from his admitted guilt and he cannot now redirect that causation on Beal in order to recover for the results of that sentencing. Consequently, Beal concludes that "[w]hether or not [Beal] informed Blinn 'of a request by federal agents to interview Blinn' [] is irrelevant []" as Indiana public policy does not permit Blinn's lawsuit to recover the profits of his criminal activity. (Appellant's Br. p. 21).

To prove a legal malpractice claim, the plaintiff-client must show: (1) employment of the attorney (the duty); (2) failure of the attorney to exercise ordinary skill and knowledge (the breach); (3) proximate cause (causation); and (4) loss to the plaintiff (damages). *Sleweon v. Burke, Murphy, Constanza & Cuppy*, 712 N.E.2d 517, 520 (Ind. Ct. App. 1999), *trans. denied*. To establish causation and the extent of harm in a legal malpractice case, the client must show that the outcome of the underlying litigation would have been more favorable but for the attorney's negligence. *Id*.

In support of his argument, Beal references *Rimert v. Mortell*, 680 N.E.2d 867 (Ind. Ct. App. 1997), *trans. denied*, Indiana's seminal case with respect to professional malpractice and Indiana's public policy for recovery of damages resulting from a criminal act. In *Rimert*, a patient with a psychiatric illness filed a medical malpractice action against his psychiatrist, claiming his psychiatrist negligently discharged him from the hospital, after the patient was charged with four counts of murder and found guilty

11

but mentally ill. *Id*. at 869. The physician settled the patient's claim, and the patient filed a petition for payment of damages from the Patient's Compensation Fund. *Id*.

Rejecting Rimert's claim, we concluded that

the rule against actions based upon or involving a plaintiff's criminal act is correlative with Indiana's public policy against permitting one to profit from his or her wrongdoing. Each embodies the principle that one who is responsible for the commission of a criminal or wrongful act must exclusively bear his or her share of the responsibility for the act, and may not evade that responsibility either through gaining some profit for the act or shifting liability for the act to another. We therefore hold it to be the public policy of this state that an individual who has been convicted of a crime should be precluded from imposing liability upon others, through a civil action, for the results of his or her own criminal conduct. Consequently, a person may not maintain an action if, in order to establish the cause of action, he or she must rely, in whole or in part, upon an illegal act or transaction to which he or she is a party or upon a violation by him or herself of the criminal laws.

*Id*. at 874.

The case at bar can be differentiated from *Rimert* and its progeny. Blinn is not relying on his own criminal conduct in an attempt to shift responsibility for the resulting damages to another party. Rather, Blinn seeks damages for Beal's own behavior in failing to represent him appropriately. Beal represented Blinn in a federal criminal action, despite Beal's limited experience with federal litigation, his unfamiliarity with the legal construction of a federal proffer session, its purpose and its consequences, and his failure to convey a request for further interviews as part of the proffer session to Blinn. Designated evidence reflects that a completed proffer session might have resulted in a reduced sentence. As such, there is a genuine issue of material fact whether Beal's conduct resulted in a harsher sentence and even jail time for Blinn. To be sure, Blinn is

12

not maintaining that Beal caused or contributed to the commission of the crime; instead, Blinn is seeking to impose liability on Beal for Beal's own subsequent conduct during the federal investigation.

Pursuant to Beal's theory, a criminal defendant, once convicted, can never pursue a legal malpractice claim against his attorney because he committed a crime, regardless of the quality of his attorney's representation. Underlying his argument is the theme that a guilty person has not been harmed by a conviction and thus should not be able to sue his or her lawyer as a result of a conviction, regardless of whether the person, although guilty, would have been acquitted or should have received a lesser sentence. However, as a practical matter, there can be no doubt that if a criminal defense lawyer's negligence causes a client to be wrongly convicted and imprisoned, the client is harmed on the first day of imprisonment, if not before. In criminal as well as in civil cases, there is no necessary and direct link between not prevailing in a case and the existence of a claim for legal malpractice. A prevailing party can be harmed by a lawyer's negligence, just as a party can lose even though the lawyer did not commit malpractice. An innocent person can be convicted even with adequate representation, and a guilty person's conviction can be actionable because a lawyer's negligence failed to protect the rights that even a guilty person has. *Stevens v. Bispham*, 851 P.2d 556, 574 (Ore. 1993) (Unis., J., concurring). Likewise, the fact that a criminal defendant has been exonerated of the criminal offense through reversal on direct appeal or otherwise does not mean that the criminal defendant's lawyer was negligent; nor does the fact that a person is acquitted at trial mean that his or her counsel was not negligent. *See id.* at 575. In other words, the

determination that, based on the evidence and argument at trial, a criminal defendant is proven guilty beyond a reasonable doubt is not the same as the issue of whether the lawyer's negligent representation contributed to or caused the resulting conviction. Beal's argument, however, allows criminal defense attorneys to hide behind their own negligence by asserting the client's conviction—albeit caused by the lawyer's negligence—as a defense to a claim of legal malpractice. In contrast, lawyers whose clients do not prevail in civil matters do not have the ability to assert to their clients, "You lost, therefore, I was not negligent." *See id*. The public not only has an interest in encouraging the representation of criminal defendants, but it also has an interest in making sure that the representation is, at the very least, not negligent.

Our decision today is in line with Indiana's current case law, which allows a criminal defendant to institute a legal malpractice claim against his or her attorney. *See Godby v. Whitehead*, 837 N.E.2d 146 (Ind. Ct. App. 2005), *trans. denied*; *Silvers v. Brodeur*, 682 N.E.2d 811 (Ind. Ct. App. 1997); *Adams v. Traylor-Wolff*, 2013 WL 5701056, (N.D. Ind., Oct. 18, 2013). In fact, the criminal defendant need not even establish his innocence to proceed with a legal malpractice case against his counsel. *See Godby*, 837 N.E.2d at 151; *Silvers*, 682 N.E.2d at 818. Because there is a genuine issue of material fact whether Blinn's charged crime and sentence would have been more favorable but for Beal's actions during his representation of Blinn, we affirm the denial of Beal's motion for summary judgment. *See Sleweon*, 712 N.E.2d at 520.[2]

---

[2] In a related argument, Beal asserts that "[t]hat Blinn's claim is barred under Indiana law owing to a lack of proximate cause was already held to be true as to attorney Kammen[.]" (Appellant's Br. p. 22).

14

CONCLUSION

Based on the foregoing, we conclude that the trial court properly denied Beal's (1)

motion to strike and (2) motion for summary judgment.

Affirmed.

VAIDIK, C. J. and MAY, J. concur

---

However, we note that in *Blinn v. Kammen*, 27A04-1008-PL-532 (Ind. Ct. App. June 30, 2011), Kammen's alleged legal malpractrice was that he failed to "call Beal to testify at the initial hearing regarding whether the [G]overnment could introduce Blinn's proffer statements." *Id*., slip op. at p. 2. With respect to this perceived act of legal malpractice, we concluded that because Kammen did ultimately put Beal on the stand, Kammen's action could not be considered the proximate cause of Blinn's injury. *See id*., slip op. at p. 3. The *Kammen* court did not evaluate Beal's action with respect to Blinn's injury.