

FILED

Dec 27 2016, 8:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Daniel H. Pfeifer
Jerome W. McKeever
Pfeifer Morgan & Stesiak
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Michael E. O'Neill
Daniel W. Glavin
Nathan D. Hansen
O'Neill McFadden & Willett, LLP
Schererville, Indiana

# IN THE

# COURT OF APPEALS OF INDIANA

P. Kevin Barkal, M.D. and
Pemcor, Inc.,

*Appellants-Plaintiffs,*

v.

Gouveia & Associates,

*Appellee-Plaintiff.*

December 27, 2016

Court of Appeals Case No.
45A03-1607-CT-1601

Appeal from the Lake Circuit
Court

The Honorable Robert G. Vann,
Special Judge

The Honorable Alice A. Kuzemka,
Magistrate

Trial Court Cause No.
45C01-1302-CT-29

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellants-Plaintiffs, P. Kevin Barkal, M.D. (Dr. Barkal) and PEMCOR, Inc. (Pemcor) (collectively, Appellants), appeal the trial court's grant of summary judgment to Appellee-Defendant, Gouveia & Associates (Attorney Gouveia), concluding that Appellants failed to designate expert testimony establishing that Attorney Gouveia breached the standard of care in his legal representation of Pemcor in the underlying bankruptcy case. We affirm.

## ISSUE

Appellants raise three issues on appeal, one of which we find dispositive and which we restate as: Whether the trial court properly concluded that Appellants failed to designate expert testimony to establish a breach of the appropriate standard of care.

## FACTS AND PROCEDURAL HISTORY

In this seemingly never-ending bankruptcy saga of several medical offices located in California, we are now presented with the alleged legal malpractice component. These sixteen-year-old proceedings arose out of a simple slip and fall personal injury claim which occurred at one of Dr. Barkal's offices in San Diego, California.

On December 1, 2000, Anna May Webb (Webb) filed a personal injury claim premised on a slip and fall in the San Diego County Superior Court in

California (California trial court) against Dr. Barkal and the San Diego Pain Management Consultants (SDPMC), in which Dr. Barkal "ha[d] an interest." (Appellants' App. Vol. 3, p. 197). On January 7, 2002, the parties entered into a settlement agreement in the amount of $138,000 to be paid by SDPMC. The agreement provided for the payment of $42,000 up front by SDPMC's insurance carrier, with the remaining balance to be paid in 48 installments of $2,000, and with Dr. Barkal personally guaranteeing payment. Because SDPMC and Dr. Barkal stopped making payments, Webb filed a motion to enforce the settlement on October 15, 2002, which was granted by the California trial court and judgment was entered against Dr. Barkal and SDPMC for $151,971.21. On December 21, 2005, after having difficulty collecting the judgment, the California trial court appointed Martin Goldberg as post judgment limited receiver (Receiver), and ordered Dr. Barkal to turn over all keys, leases, books, records, ledgers, and all other business records relating to twelve entities, including Pemcor (collectively, Barkal Entities), owned by Dr. Barkal, as well as prohibited Dr. Barkal from using any income generated by these Barkal Entities. On May 5, 2006, Webb filed a motion to amend the original judgment to include Dr. Barkal's aliases and nine of Dr. Barkal's alter ego entities, which was granted on June 26, 2006. On January 4, 2008, the California trial court entered an order of contempt against Dr. Barkal, finding him guilty of contempt of court for "knowingly and willfully" violating the court's orders by attempting to collect accounts of the Barkal Entities and interfering with the duties of the Receiver. (Appellants' App. Vol 2, pp. 179-

181).

[6] In January of 2008, Dr. Barkal, who by now had moved to Munster, Indiana, retained the Indiana law firm of Daniel L. Freeland & Associates, P.C. (Attorney Freeland) to file bankruptcy in Indiana. Attorney Freeland agreed to represent Dr. Barkal individually, with the caveat that Attorney Gouveia be hired to separately represent the Barkal Entities to prevent any conflict of interest. After a meeting, Attorney Gouveia accepted representation of the Barkal Entities in Chapter 13 bankruptcy proceedings.

[7] On March 10, 2008, Attorney Freeland filed a voluntary petition for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Northern District of Indiana (Bankruptcy Court) on behalf of Dr. Barkal. Eight days later, on March 18, 2008, Attorney Freeland filed a motion for turnover[1] against the Receiver on behalf of Dr. Barkal and the appointed trustee. In this motion, Dr. Barkal and the trustee requested that the Receiver deliver all items from the collection against Dr. Barkal and the Barkal Entities to the Trustee. On March 28, 2008, by a separate motion, Attorney Gouveia intervened in the proceedings on behalf of the Barkal Entities, claiming that the Entities had an interest in the accounts receivables the Receiver was seeking to collect. On April 18, 2008, the Bankruptcy Court conducted a hearing on the motion for turnover filed by Dr. Barkal and joined by the Barkal Entities. At the hearing, the parties agreed that the "core issue" should be characterized as:

---

[1] The purpose of a turnover is to get the item out of the bankruptcy estate and returned to the person filing the motion. *See* Appellants' App. Vol. 5, p. 141.

The extent to which proceeds of accounts receivable of the Barkal Entities or of [Dr. Barkal], or corporate governance powers in relation to the Barkal Entities – now or in the future subject to the possession or control of [the Receiver] appointed with respect to Case No. GIC757374 in [the California trial court] – constitute property of the Chapter 13 bankruptcy estate of [Dr. Barkal] in case number 08-20663.

(Appellants' App. Vol. 3, pp. 16-17). After ordering the Receiver to turn over $9,494.00 to the trustee from an account designated under Dr. Barkal's name, the Bankruptcy Court set an evidentiary hearing for May 16, 2008, or in the alternative for both parties to agree to a statement of designated record approved by all the attorneys. The parties subsequently agreed to a joint index of exhibits regarding appointment of Receiver and judgment – debtor alter egos, which was filed with the Bankruptcy Court on the evidentiary hearing date. On July 15, 2008, the Bankruptcy Court "determined that the accounts receivable of the Barkal Entities are not property of the Chapter 13 bankruptcy estate" filed by Dr. Barkal, and therefore, denied the motion for turnover of the Barkal Entities. (Appellants' App. Vol. 3, p. 42).

[8] On July 21, 2008, a joint conference call was conducted between, among others, Dr. Barkal, Attorney Freeland, and Attorney Gouveia, represented by his associate attorney, Shawn Cox (Attorney Cox). During the meeting, Dr. Barkal was advised that the Barkal Entities could not be in a Chapter 13 bankruptcy, because "a 13 is not even structured to address companies." (Appellants' App. Vol. 4, p. 205). Attorney Freeland recommended withdrawing the Chapter 13 bankruptcy, with which Dr. Barkal agreed, and to

re-file the bankruptcy petition as a Chapter 11 in an attempt to save Dr. Barkal's property in California from foreclosure. Dr. Barkal noted that they would "immediately proceed to seek counsel for the filing of bankruptcy by one or more of the 9 companies, so that the liquidation of those companies' assets will provide additional income to the re-filed Barkal bankruptcy." (Appellants' App. Vol. 3, p. 195). That same day, Attorney Freeland, on behalf of Dr. Barkal, moved to dismiss the Chapter 13 bankruptcy case.

[9]     On August 11, 2008, Dr. Barkal wrote to Attorney Cox requesting that Attorney Gouveia "immediately file the necessary corporate bankruptcies to accomplish the short-term goal of staying the foreclosure sale of the house on August 18, and buying us additional time to allow the Appellate Court in California to issue a ruling which may drastically alter the draconian orders under which I have been trying to survive." (Appellants' App. Vol. 3, p. 4). Two days later, Attorney Cox responded:

> As I relayed to you on Monday, and I reiterated to your California counsel yesterday, I am not in a position to undertake the representation of one or more of the "Barkal Entities" to file Chapter 7 bankruptcies.
>
> As we discussed Monday, our engagement was limited to addressing certain issues in your Chapter 13 [b]ankruptcy, and we did not ever agree to file bankruptcies on behalf of the entities. At no time did we agree to file bankruptcies on behalf of these entities and we are not accepting such an engagement at this time.

> We would be happy to provide you names of other bankruptcy practitioners in the area if you so request.

(Appellants' App. Vol. 3, p. 2).

[10] In January of 2009, Dr. Barkal retained Attorney David Welch (Attorney Welch) to file bankruptcy petitions on behalf of the Barkal Entities. On October 9, 2009, Attorney Welch filed petitions for Chapter 11 bankruptcy proceedings in the Bankruptcy Court for the following Barkal Entities: West Coast Interventional Pain Medicine, Inc.; Surgical Leasing Company, Inc.; SDPMC; CV Surgical Management, Inc.; and The Pain Management Group. On October 29, 2009, Attorney Welch filed a Chapter 11 bankruptcy petition on behalf of Medical Facilities Management, G.P. No Chapter 11 bankruptcy petition has ever been filed for Pemcor, the named plaintiff in this cause. On August 12, 2010, the Chapter 11 bankruptcy proceedings were transferred from the Bankruptcy Court to the Southern District of California based on the convenience of the parties and in the interest of justice. After the proceedings were transferred, a trustee was appointed and the bankruptcies were converted to Chapter 7 proceedings to collect the accounts receivable of the Barkal Entities in a less expensive fashion.

[11] Meanwhile, on March 9, 2010, Appellants filed a Complaint in the Lake Superior Court (trial court) alleging that due to Attorney Gouveia's legal malpractice, they had lost "meritorious bankruptcy cases and the attendant bankruptcy protection available to [them] under [f]ederal [l]aw." (Appellants'

App. Vol. 2, p. 19). Attorney Gouveia filed his answer and affirmative defenses on June 28, 2010, denying the allegations of the Complaint. On January 19, 2016, Attorney Gouveia filed his motion for summary judgment, memorandum of law, and designation of evidence. In his motion, Attorney Gouveia contended that Appellants had not produced any expert testimony to support their allegation that he had violated the applicable standard of care. Secondly, Attorney Gouveia asserted that Appellants' claims failed as a matter of law under the unclean hands doctrine and were barred by the Rooker-Feldman doctrine. Lastly, Attorney Gouveia disputed the existence of any damages as a result of his perceived breach of the standard of care. On April 21, 2016, Appellants filed their Response, memorandum of law, and designation of evidence. They posited that Attorney Gouveia had committed legal malpractice by: 1) failing to advise Dr. Barkal against filing a Chapter 13 bankruptcy; 2) waiving an evidentiary hearing to support a motion for turnover; and 3) failing to advise or take any additional action once the Chapter 13 bankruptcy was dismissed. In support of their contentions, Appellants submitted the deposition testimony of Attorney Welch and Attorney Mark Zuckerberg (Attorney Zuckerberg). On June 8, 2016, the trial court conducted a hearing on Attorney Gouveia's motion. Twenty days later, on June 28, 2016, the trial court granted summary judgment to Attorney Gouveia, concluding:

> Upon careful consideration of the arguments presented, and
> review of the parties' submissions, the [c]ourt hereby finds that
> [Appellants] have failed to present the testimony of an expert
> witness to establish the appropriate standard of care and a breach

thereof. The [Appellants] have also failed to establish that the facts herein would fall under the common knowledge exception to the requirement to present expert testimony to support a claim of professional malpractice. Therefore, there are no genuine issues of material fact remaining that would preclude entry of summary judgment, and [Attorney Gouveia] is entitled to judgment as a matter of law.

(Appellants' App. Vol. 2, p. 17).

[12] Appellants now appeal. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Standard of Review*

[13] Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). "A fact is material if its resolution would affect the outcome of the case, and an issue is genuine if a trier of fact is required to resolve the parties' differing accounts of the truth . . . , or if the undisputed facts support conflicting reasonable inferences." *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009).

[14] In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we must determine whether there is a

genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* at 607-08. In doing so, we

consider all of the designated evidence in the light most favorable to the nonmoving party. *Id.* at 608. The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id.* When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id.*

## II. *Legal Malpractice*

[15]     It is a basic principle of professional conduct that an attorney must faithfully, honestly, and consistently represent the interest and protect the rights of his client, and that he is bound to discharge his duties to his client with the strictest fidelity, to observe the highest and utmost good faith, and to inform his client promptly of any known information important to him.

*Blasche v. Himelick*, 210 N.E.2d 378, 381 (Ind. Ct. App. 1965), *reh'g denied, trans. denied*. In Indiana, an attorney is generally required to exercise "ordinary skill and knowledge." *Clary v. Lite Machines Corp.*, 850 N.E.2d 423, 432 (Ind. Ct. App. 2010), *trans. denied*. Accordingly, to prove a legal malpractice claim, the plaintiff-client must show: (1) employment of the attorney (the duty); (2) failure

of the attorney to exercise ordinary skill and knowledge (the breach); (3) proximate cause (causation); and (4) loss to the plaintiff (damages). *Beal v. Blinn*, 9 N.E.3d 694, 700 (Ind. Ct. App. 2014), *trans. denied*. To establish causation and the extent of harm in a legal malpractice case, the client must show that the outcome of the underlying litigation would have been more favorable but for the attorney's negligence. *Id.*

[16] Focusing on the duty and breach elements of the legal malpractice claim, Appellants first contend that the trial court erred when it concluded that no testimony had been designated to establish the appropriate standard of care and Attorney Gouveia's breach thereof. Appellants point to the deposition testimony of Attorneys Welch and Zuckerberg as properly designated expert testimony to withstand Attorney Gouveia's motion for summary judgment. Evidentiary rulings, including a decision to exclude expert testimony, lie solely within the trial court's discretion and will not be reversed absent an abuse of that discretion. *Hannan v. Pest Control Services, Inc.*, 734 N.E.2d 674, 679 (Ind. Ct. App. 2000), *trans. denied*.

[17] With regard to the question of whether an attorney exercised due care and diligence in his representation of the client in the underlying case, Indiana law requires "expert testimony" to demonstrate the standard of care by which the [] attorney's conduct is measured." *Hacker v. Holland*, 570 N.E.2d 951, 953 (Ind. Ct. App. 1991), *reh'g denied, trans denied*. In

this respect, the trial court is considered the gatekeeper for the admissibility of expert opinion evidence under Indiana Evidence Rule 702. *Doe v. Shults-Lewis Child & Family Servs., Inc.*, 718 N.E.2d 738, 750 (Ind. 1999). With regard to the admissibility of expert testimony, Indiana Evidence Rule 702 provides:

(a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

(b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

Knowledge admissible under the Rule must connote more than subjective belief or unsupported speculation. *Howerton v. Red Ribbon, Inc.,* 715 N.E.2d 963, 966 (Ind. Ct. App. 1999), *trans. denied.* Once the admissibility of the expert's opinion is determined under Rule 702, "the accuracy, consistency, and credibility of the expert's opinions may properly be left to vigorous crossexamination, presentation of contrary evidence, argument of counsel, and resolution by the trier of fact." *Sears Roebuck & Co. v. Manuilov*, 742 N.E.2d 453, 460 (Ind. 2001).

[18]     Focusing on the first prong of Evidence Rule 702, Appellants posit that based on their "training, education, skill, and experience as bankruptcy attorneys,"

Attorneys Welch and Zuckerberg qualified as an expert witness under the Rule. (Appellants' Br. p. 18). The designated evidence confirms Attorneys Welch and Zuckerberg's wealth of experience as bankruptcy attorneys. Attorney Welch, licensed in Illinois, elaborated on his legal education at the John Marshall Law School in Chicago, his legal accomplishments, and his practice with a primary concentration on bankruptcy matters. Likewise, Attorney Zuckerberg testified to his educational background, his consumer bankruptcy practice, and his Indiana board certification in consumer bankruptcy. As such, it is undeniable that both Attorneys are imminently qualified by "knowledge, skill, experience, [] [and] education" to be characterized as experts in bankruptcy. *See* Evid. R. 702(a).

[19] Nonetheless, ignoring the experience element, Attorney Gouveia, in response, emphasizes each Attorney's statement that they had not been retained as an expert in the case and their respective admissions that "they did not have the requisite information in order to provide expert opinions." (Appellee's Br. p. 31).

[20] Turning to the designated evidence before us, Attorney Welch, upon being questioned by counsel for Attorney Gouveia, made the following statements:

[Attorney Gouveia]: Do you understand that there is a legal malpractice case pending in Indiana captioned P. Kevin Barkal,

M.D., [], and Pemcor, Inc. v. Gouveia & Associates? Are you generally aware of that?

[Attorney Welch]: Generally aware. I don't know if I knew about the Pemcor part, but generally aware.

****

[Attorney Gouveia]: [M]y understanding coming down here is you were going to say Gouveia & Associates somehow breached the standard of care that applies to reasonable lawyers practicing bankruptcy law from Northwest Indiana. Do you have any opinions of that sort?

[Attorney Welch]: Well, first of all, me as an expert is news to me. . . . If I were to render an expert opinion, I would spend a lot more time in doing work to prepare my opinion than I did preparing for this deposition, so. . . . I'm not here giving an expert opinion of anything. I was never asked to, to be honest with you.

****

[Attorney Gouveia]: Safe to say that you haven't reviewed the Gouveia & Associates file or [Attorney] Freeland's file with regard to their respective representations in that earlier bankruptcy proceeding?

[Attorney Welch]: Absolutely not.

(Appellants' App. Vol. 5, pp. 123-24, 126).

[21] Attorney Zuckerberg testified in a similar vein:

[Attorney Zuckerberg]: I thought when I was going to be showing up today it only revolved around my reviewing the schedules as to [Attorney] Freeland and the eligibility of Dr. Barkal on the 13. That was my sole expectation.

****

[Attorney Gouveia]: Have you ever been retained as an expert in Barkal versus Gouveia?

[Attorney Zuckerberg]: No.

****

[Attorney Gouveia]: Has [Appellants' attorney] at any time asked you to form opinions about the standard of care that would apply to [Attorney Gouveia's] work in connection with Dr. Barkal?

[Attorney Zuckerberg]: He asked my opinion, but I hadn't seen all of the documents, nor was I familiar with the information to render an opinion.

****

[Attorney Gouveia]: Have you been asked to reach an opinion in connection with whether any standard of care was breached by [Attorney Gouveia] in connection with the Barkal bankruptcy?

[Attorney Zuckerberg]: No.

****

[Attorney Gouveia]: Just to sum up, as you sit here today, do you have any opinion on any issue connected with what [Attorney Gouveia] and his firm did or didn't do in the course of their representation of the Barkal Freeland case?

[Attorney Zuckerberg]: I know nothing. I've reviewed nothing. I'm not qualified to give an opinion, I don't think.

(Appellants' App. Vol. 5, pp. 144, 145, 146)

[22] Based on this designated evidence, it is clear that neither attorney had reviewed the materials relevant to the instant legal malpractice proceeding, nor were they prepared to formulate any opinions relevant to the instant matter and helpful to the trier of fact. Although both attorneys testified in general terms and answered multiple speculative hypotheticals about the proceedings in a Chapter 13, 11, and 7 bankruptcy, they both admitted not to be qualified to provide expert opinions with regard to Attorney Gouveia's specific conduct in the matter at hand, his standard of care and alleged breach thereof. Accordingly, while Attorneys Welch and Zuckerberg may be well versed in bankruptcy, here, in the absence of having reviewed the appropriate documentation, their knowledge cannot assist "the trier of fact to understand" whether Attorney Gouveia committed legal malpractice when representing the Barkal Entities in the Chapter 13 proceedings. *See* Evid. R. 702(a).

[23] In an effort to survive Attorney Gouveia's motion for summary judgment, Appellants assert that Attorney Gouveia's purported breach of the standard of

care fell within the common knowledge exception to the expert testimony requirement. While the common knowledge exception is a generally accepted deviation from the requirement of expert testimony in a legal malpractice case, it is very limited and applies solely in cases of obvious and transparent malpractice. In *Storey v. Leonas*, 904 N.E.2d 229, 238 (Ind. Ct. App. 2009), *reh'g denied, trans. denied*, we characterized the exception as "when the question is within the common knowledge of the community as a whole or when an attorney's negligence is so grossly apparent that a layperson would have no difficulty in appraising it." The vast array of federal rules regulating the bankruptcy landscape can be daunting at times, even for a legal professional. The relative wisdom of pursuing relief under Chapter 13 of the Bankruptcy Code versus a different chapter based on the facts presented is certainly not within the "common knowledge" of the community as a whole and rather requires the knowledge, training, and expertise of an expert in the field.

[24] Therefore, as Appellants failed to present the testimony of an expert supporting their allegation that Attorney Gouveia breached his standard of care during his representation of the Barkal Entities in the Chapter 13 bankruptcy proceedings, the trial court properly granted summary judgment to Attorney Gouveia.

CONCLUSION

[25] Based on the foregoing, we hold that the trial court properly concluded that Appellants failed to designate expert testimony to establish a breach of the appropriate standard of care.

Affirmed.

Bradford, J. and Altice, J. concur