

**ATTORNEY FOR APPELLANT**

P. Jeffrey Schlesinger
Merrillville, Indiana

**ATTORNEYS FOR APPELLEES**

John M. McCrum
Robert J. Feldt
Kevin T. McNamara
Eichhorn & Eichhorn, LLP
Hammond, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Juan Vega, | July 7, 2017 |
| *Appellant-Plaintiff,* | Court of Appeals Case No. 45A03-1605-MI-1067 |
| v. | Appeal from the Lake Superior Court |
| City of Hammond and City of Hammond Board of Public Works and Safety, | The Honorable Calvin D. Hawkins, Judge |
| *Appellees-Defendants.* | Trial Court Cause No. 45D02-1507-MI-9 |

**Brown, Judge.**

[1] Juan Vega appeals the trial court's order and ruling on his motion to correct errors in favor of the City of Hammond and the City of Hammond Board of Public Works and Safety (the "Board," and collectively with the City of Hammond, the "Appellees"). Vega raises three issues, one of which we find dispositive and revise and restate as whether the court abused its discretion in granting the Appellees' motion for directed verdict. We reverse and remand.

*Facts and Procedural History*

[2] Vega owns 4839 Elm Street, located in Hammond, Indiana. In 2012, Vega permitted Matt Saliga, an inspector for Hammond, to inspect the home, and afterward, on November 9, 2012, the City issued a Notice of Violation to Vega identifying various violations, such as the presence of unsafe conditions and the absence of proper building permits. The property was found to contain an unsafe second floor apartment lacking proper dwelling unit fire protection separation and proper fire resistance rating. The notice also stated that the property was contrary to Hammond zoning laws as to the number of units permitted in the district in question.[1] The Notice stated that Vega must repair

---

[1] The City's Notice of Violation sent to Vega on November 9, 2012, stated the following:

Your property at **4839 Elm St.** has been inspected and found to be an **UNSAFE BUILDING** in violation of Indiana Code 36-7-9 et seq. and Sections 96, 150, 151, 156, and 158 of the Hammond City Code and International Residential [Code].

This building is deemed unsafe based on the following:

**2nd Floor Apartment**:

International Residential Code §317.7, <u>Dwelling Unit Separation,</u> specifically dwelling units shall be separated from each other by wall and / or floor assemblies having not less than 1 – hour fire-resistance rating when tested in accordance with ASTM E 119.

or demolish the building to bring it into compliance within thirty days and that failure to do so would result in the Building Commissioner instituting legal proceedings against him.

[3] A hearing before the Board on the Notice of Violation was originally set for November 29, 2012, but the hearing was continued multiple times, first to January 17, 2013, and then to March 14, 2013, as well as May 30, 2013, and August 8, 2013. At that point, the matter "kind of fell into the void for a while and nobody remembered anything about it."[2] Transcript at 121. Eventually, it was set for a hearing before the Board on September 18, 2014, and Vega and his counsel requested a continuance due to a scheduling conflict and because "there is incomplete discovery in this cause," which was granted. Appellant's Appendix Volume 2 at 51. On November 13, 2014, Saliga and Kris Kantar,

---

Hammond Municipal Code §150.003 Building Permit Fees, specifically any person desiring to work on a building must obtain a building permit.

Hammond Municipal Code §150.017 Contractor License, specifically no permit for plumbing work was issued and no license was obtained to do the work.

Hammond Municipal Code §151.16, et seq., Electrical Inspection Department, specifically no permit was obtained to do the work.

Hammond Municipal Code §151.34, et seq., License Required/Displayed, specifically no license was obtained to do the work.

Hammond Municipal Code §158.01 Zoning, specifically pursuant to the City of Hammond Zoning Code, Ordinance o. 8514, Section 25.20, no request was made to the Appellees of Zoning to convert attic into two apartments.

Hammond Municipal Code §156.10 Plumbing, specifically no license was obtained by the State's Plumbing Commissioner to do the work.

Hammond Municipal Code §156.20 Plumbing, specifically no plumbing permit was obtain [sic] to do the work.

Appellant's Appendix Volume 2 at 20-21.

[2] Kris Kantar, the City's counsel, made this observation at the Board's November 13, 2014 hearing.

who was the City's counsel, appeared before the Board and presented the City's case, in which Saliga tendered his inspection file including findings, photographs and permit research for 4839 Elm Street. Neither Vega nor his counsel appeared at the hearing. The Board unanimously approved "the Findings regarding . . . 4839 Elm . . . ." Appellees' Appendix at 122.

[4] On December 10, 2014, Vega by counsel moved the Board to grant relief from the order of November 13, 2014, asserting that neither Vega nor counsel had been advised that the matter was set for hearing, and the Board vacated the order and reset a hearing for February 26, 2015. Vega's counsel moved for a continuance of that hearing, and the matter was reset on the agreed date of April 30, 2015. "During that time [Vega] and Counsel for [Vega] were to obtain a second inspection and see if any repairs could be made to correct the issues with the property." *Id.* at 43.

[5] On April 29, 2015, Vega's counsel sent a motion to reassign date and accompanying letter via fax to Kantar, the letter stating that Saliga had not yet performed a second inspection of the property. *Id.* at 29. The letter noted that counsel had not heard from Saliga "since the communications in early March," that he had "put in a call to him Tuesday (4/28) but missed him by a couple-of-minutes," and that he hoped that Saliga's "schedule will permit us to coordinate something in May and, hopefully, have a 'sit-down' in June to see if it's resolvable." *Id.* The motion to reassign date also indicated that, if word was not received sooner, counsel would appear on April 30, 2015 "between 10-10:30 a.m. instead of 9:00 a.m. due to a medical appointment that counsel

needs to attend and anticipates will be completed at approximately 10:00 a.m."
and requested that the matter be set for a hearing on the June calendar. *Id.* at
28.

[6] The Board held the hearing on April 30, 2015, and neither Vega nor counsel
appeared. At the hearing, Kantar observed that Vega had requested a
continuance, and the matter "has been continued at regular intervals for over
two years" and "doesn't ever seem to be going anywhere." Transcript at 122-
123.[3] Saliga stated that "[h]e's really made no attempt to schedule this." *Id.* at
123.[4] Kantar recommended that the Board give Saliga a week to prepare an
order, that the Board sign it, and that Vega could then "appeal it if he wants to.
Enough is enough." *Id.* The Board by motion approved that course of action.

[7] On May 6, 2015, Vega's counsel filed a motion for relief and request for hearing
stating that Kantar agreed in their conversation on or about February 25, 2015,
that she would communicate with Saliga and that Vega's counsel should follow
up with an email to Saliga, that counsel sent an email on March 3, 2015, and a
fax on March 4, 2015, copying Kantar, that counsel did not receive a reply, and
that counsel moved for a continuance as the hearing date approached. The
letter to Saliga was attached to the motion as Exhibit 1. The motion also
indicated that, on the date of the hearing, following his medical procedure and

---

[3] The transcript from the judicial review hearing contains a transcription of the Board hearings, as recordings
of those hearings were played for the court at the review hearing.

[4] The transcript identifies the speaker as "Male Voice 1."

while en route to City Hall, counsel was advised that the meeting had adjourned. On May 7, 2015, the Board entered its Finding of Fact and Decision ordering Vega to remove the second floor apartment, specifically stating as follows:

> [I]n the present case, the illegal second floor apartment is to be removed. During no point in this property's two and a half year history, has it ever been demonstrated that the second floor apartment is legal, safe and compliant with Zoning.
>
> In addition, the record of the hearing is devoid of any evidence that the upstairs apartment was ever lawfully converted into an apartment. In order to be a lawful non conforming use, the use must have "lawfully existed prior to the enactment of a zoning ordinance." The property owner of 4839 Elm have [sic] failed to show, by any evidence, that this conversion was ever performed legally.
>
> Based on the evidence, and law, the 2nd Floor Apartment at 4839 Elm cannot lawfully be occupied in its present condition. Should proper zoning approval be obtained, and the property brought into compliance with all current building and fire codes, this decision could be reconsidered by the Appellees, but at the present moment under the present circumstance, the declaration of the Inspections Department that the property is uninhabitable is AFFIRMED.

Appellant's Appendix Volume 2 at 47. That same day, the City issued its Findings and Order noting that the Board found that no building permits were applied for or issued for a second-floor apartment as required by the Hammond Municipal Code and that no fire separation between units exists in violation of

the International Building Code on fire separation and ordering that "[t]he 2nd floor apartment must be removed, the property converted back to a single family home and all work must be performed by licensed contractor(s) in the city of Hammond." *Id.* at 48.

[8] On May 11, 2015, Vega filed a complaint for judicial review pursuant to Ind. Code § 36-7-9-8 in the Lake Superior Court and attached Exhibits A-K, which included a copy of the Board's Findings of Fact and Decision and the City's Findings-Order of May 7, 2015. On June 12, 2015, Vega's counsel conducted a deposition of Saliga in which Saliga acknowledged that he "misspoke" at the April 30, 2015 hearing of the Board when he indicated that he had not been contacted to set up an inspection because at that time he had forgotten about the letter he received from Vega's counsel. Plaintiff's Exhibit 6 at 38.

[9] On March 8, 2016, the court held a judicial review hearing and the parties tendered and the court admitted Joint Exhibit 1, which is a collection of video recordings of the Board meetings in question, including two segments of the November 13, 2014 meeting, as well as the hearings of April 30, 2015, and May 7, 2015. Each segment was played for the court. Following the presentation of the recordings, Vega's counsel offered and the court admitted Plaintiff's Group Exhibit 1, which is a copy of Exhibits A through K attached to the complaint for judicial review. Vega's counsel then offered and the court admitted Plaintiff's Group Exhibit 2 containing the minutes of the Board hearings from November 13, 2014, April 30, 2015, and May 7, 2015. Next, Vega's counsel offered Plaintiff's Group Exhibit 3 containing excerpts from a deposition of

Saliga taken on July 24, 2013, noting that if opposing counsel wished to offer additional portions "it's certainly his free game." Transcript at 126. The Appellees' counsel noted that it was the first he'd seen of it "in this form in partial deposition," and objected on that basis, and the court admitted the exhibit and noted that the Appellees would have the opportunity "to make any appropriate responses to it by way of other portions of the deposition." *Id.* at 127. Vega's counsel next offered Plaintiff's Group Exhibit 4, which included five exhibits received during Saliga's June 12, 2015 deposition, and the court admitted the exhibit. Vega's counsel then offered Plaintiff's Exhibit 5 containing excerpts of the Saliga deposition of June 12, 2015, before withdrawing it and instead offering the entire deposition as Plaintiff's Exhibit 6, which the court admitted. The court then asked Appellees' counsel "You don't have an objection to the whole dep being admitted, do you?" and counsel replied: "My objection is he's attempting to offer evidence that wasn't before the Board. I made that objection. I can keep making that objection if you want." *Id.* at 134-135. The court responded as follows:

> And I think based upon -- what I'm going to basically do, I'll just let you folks know now. After I hear all the evidence, I will give you ten days after the hearing to submit your findings and conclusions. The Court will consider that. So we can end that, address every and any matter that you want to address.

*Id.* at 135. The court also admitted Plaintiff's Exhibit 7 containing a permit history, Plaintiff's Exhibit 9, which is the Appellees' Response to Vega's

Request for Admission, and Plaintiff's Exhibit 10 containing the Appellees' Answer to Vega's Interrogatories.

[10] After the court admitted Plaintiff's Exhibit 10, Vega rested and the court recessed for lunch. When the hearing reconvened, the Appellees' counsel began as follows:

> Your Honor, we would like to make a quick motion for directed verdict. We think the plaintiff has the obligation to put the record of the Board of Works hearings from November 13, 2014; April 30th, 2015; May 7th, 2015, before the Court, and has failed to do so. Has only put piecemeal documents in front of the Court that were part of the Board's record. We also don't think the plaintiff has met his burden to show the Findings are arbitrary, capricious, et cetera.
>
> There isn't any dispute that the -- at least there hasn't been any evidence so far that the building is occupied, the two units without proper fire separation, and that that's a dangerous condition. And there also isn't any record that the Board's decision not to allow [Vega's counsel] and Mr. Vega a ninth continuance after two years of litigation that that Finding also was arbitrary, capricious, et cetera.

*Id.* at 152-153. Vega's counsel responded by asserting that he presented an adequate record and that "the only inspection done by Mr. Saliga was in 2013" and "[t]here was supposed to be an inspection before there was a hearing on the merits." *Id.* at 154-155. The court then granted the Appellees' motion without elaboration. *Id.* at 156.

[11] The next day, the court entered a written order granting the Appellees' motion, which it termed a motion for judgment on the evidence, again without explanation. Vega subsequently filed a motion to correct errors which was denied.

### *Discussion*

[12] The dispositive issue is whether the trial court abused its discretion in granting the Appellees' motion for directed verdict. At the outset we address an argument raised by Vega in which he asserts that the Appellees' motion was made pursuant to Ind. Trial Rule 50, which is improper at a bench trial, that accordingly "the court made no [] findings," and that he "was unable to request findings of fact since the trial court rendered judgment upon the incorrect rule and thus inappropriately limited review by the Court of Appeals." Appellant's Brief 10.

[13] The Indiana Supreme Court has noted that a court on appeal will address a trial court's ruling on a motion for directed verdict made at a bench trial as a Trial Rule 41(B) motion for an involuntary dismissal. *See Workman v. State*, 716 N.E.2d 445, 447 (Ind. 1999) (noting that directed verdict motions made under Ind. Trial Rule 50, "otherwise known as judgments on the evidence, [are] not applicable to bench trials" and that the Court would "address the motion as a Trial Rule 41(B) motion for an involuntary dismissal"). Ind. Trial Rule 41(B) provides:

> **(B) Involuntary dismissal: Effect thereof.** After the plaintiff or party with the burden of proof upon an issue, in an action tried

by the court without a jury, has completed the presentation of his evidence thereon, the opposing party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the weight of the evidence and the law there has been shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff or party with the burden of proof, the court, when requested at the time of the motion by either party shall make findings if, and as required by Rule 52(A). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision or subdivision (E) of this rule and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, operates as an adjudication upon the merits.

[14] A court is required to enter findings when granting a motion for involuntary dismissal under Ind. Trial Rule 41(B) only upon request at the time of the motion by either party. The record reveals that Vega did not make a request for findings. We therefore find any error by the trial court in granting the Appellees' motion based upon the wrong rule of trial procedure and not entering findings to be waived. *See Puckett v. Miller*, 178 Ind. App. 174, 182-183, 381 N.E.2d 1087, 1092-1093 (1978) (noting that "The comments of the Civil Code Study Commission with regards to TR 41(B) states, 'This fulfills the function of a motion for a directed verdict in a jury case (a motion for judgment on the evidence under Rule 50). *It will not modify present Indiana practice to any degree*[']") (footnote omitted).

[15] "A Trial Rule 41 motion to dismiss tests the sufficiency of the plaintiff's case in chief." *Brown v. Guinn*, 970 N.E.2d 192, 195 (Ind. Ct. App. 2012). "Our review of the denial of the motion for involuntary dismissal is limited to an examination of the evidence most favorable to the nonmoving party that was presented prior to the filing of the motion." *Id.*

[16] Vega asserts that the Appellees, in making their motion for directed verdict, stated that he had the obligation to offer into evidence the entire administrative record but that he "is unaware of any such requirement." Appellant's Brief at 10. He further argues in his reply brief that this is a misinterpretation of *Kollar v. Civil City of South Bend*, 695 N.E.2d 616 (Ind. Ct. App. 1998), *reh'g denied*, *trans. denied*. He contends that, even if he were charged with providing the court with the full administrative record, he satisfied that requirement when he tendered the video recordings of the relevant hearings in Joint Exhibit 1. He points out that the court admitted into evidence a number of documentary exhibits, including the entire deposition of Saliga as Plaintiff's Exhibit 6, which it did not have time to review when it granted the directed verdict at the close of his case-in-chief, and argues that the court envisioned admitting the exhibits and subsequently giving the parties ten days to submit findings and conclusions but that it instead granted the directed verdict motion without reviewing those exhibits. He also argues that he presented evidence that the City had agreed to a re-inspection of his property by Saliga prior to a hearing on the merits, that such inspection had not been performed despite the request of counsel, that the Board's ruling "appears to be based upon the delay rather than any merits of the

Notice," and that accordingly such ruling was arbitrary and capricious. Appellant's Brief at 9.

[17] The Appellees argue that "Vega was supposed to place the entire Administrative Record of the Board before the trial Court so that the Trial Court would be able to examine the documentary evidence as well as the statements made at the various hearings, but he refused to do so." Appellees' Brief at 27. They assert that the Board's decision is entitled to deference on judicial review, and "[l]acking the entire Administrative Record . . . there [] was no legitimate basis for the Trial Court to question the Board's ruling . . . ." *Id.* at 29.

[18] To the extent the Appellees' motion was based upon the fact that Vega did not enter into evidence the full administrative record, we observe that Vega filed the complaint for judicial review pursuant to Ind. Code § 36-7-9-8, which provides as follows:

> (a) An action taken by the hearing authority under section 7(d), 7(e), or 9(d) of this chapter or a finding by the hearing authority of abandonment under IC 36-7-37 is subject to review by the circuit or superior court of the county in which the unsafe premises are located, on request of:
>
> > (1) any person who has a substantial property interest in the unsafe premises; or
> >
> > (2) any person to whom that order or finding was issued.

(b) A person requesting judicial review under this section must file a verified complaint including the findings of fact and the action taken by the hearing authority. The complaint must be filed within ten (10) days after the date when the action was taken.

(c) An appeal under this section is an action de novo. The court may affirm, modify, or reverse the action taken by the hearing authority.

[19] There is no dispute that Vega complied with Section 8's requirements that he file the complaint within ten days and that the complaint include the findings of fact and the action taken by the hearing authority. Indeed, Vega's complaint contained twelve exhibits, and Exhibit H included the Board's Findings of Fact and Decision entered on May 7, 2015, as well as the City's May 7, 2015 Findings-Order. Section 8 does not require that the complainant file the entire administrative record with the circuit or superior court. Moreover, as highlighted above at the hearing Vega introduced a number of exhibits, including video recordings of all the relevant Board hearings, as well as transcripts of those hearings, two depositions of Saliga and exhibits received during Saliga's deposition, and responses to a request for admission and interrogatories.

[20] It appears that the Appellees' motion is based upon a provision in Indiana's Administrative Orders and Procedures Act ("AOPA"), in which Ind. Code § 4-21.5-5-13(a) requires that:

Within thirty (30) days after the filing of the petition, or within further time allowed by the court or by other law, the petitioner shall transmit to the court the original or a certified copy of the agency record for judicial review of the agency action, consisting of:

(1) any agency documents expressing the agency action;

(2) other documents identified by the agency as having been considered by it before its action and used as a basis for its action; and

(3) any other material described in this article as the agency record for the type of agency action at issue, subject to this section.

Ind. Code § 4-21.5-2-0.1(a)(1) governs the application of AOPA and states that it governs "all proceedings, and all proceedings for judicial review or civil enforcement of *agency action* . . . ." (Emphasis added). An "agency" under AOPA "means any officer, board, commission, department division, bureau, or committee *of state government* that is responsible for any stage of a proceeding under this article. . . ." (Emphasis added). The Board is not a state government agency; rather, it is a works board defined in Ind. Code § 36-1-2-24(3). As such, the Board is not governed by AOPA.

[21] This Court discussed "action de novo" judicial review, as called for in Ind. Code § 36-7-9-8(c), in *Kollar*. As in this case, the Kollars appealed a demolition order served by the municipal body, the South Bend City Enforcement Division, which the trial court affirmed. 695 N.E.2d at 618-619. We discussed

the standard of review applicable under Ind. Code § 36-7-9-8, in which the Kollars asserted "that the words 'action de novo' require the trial court to rehear the evidence and decide anew whether the demolition order was reasonable." *Id.* at 619. The Kollars argued that because the statute "does not provide for the preparation of a transcript of the hearing officer's proceedings" and the record of the administrative proceedings "was not preserved, it is necessary for the trial court to rehear the evidence and decide the issues anew." *Id.*

[22] We disagreed, observing that "[i]t is well established in Indiana law that the term 'de novo' in statutes providing for judicial review of administrative orders does not authorize a trial court to substitute its judgment for that of the agency below." *Id.* Citing separation of powers concerns, we held that the standard of review to be applied is as follows:

> A court reviewing under a de novo statutory direction may, to a limited extent, weight the evidence supporting the finding of fact by an administrative agency. But it may negate that finding only if, based upon the evidence as a whole, the finding of fact was
>
> > (1) arbitrary,
> >
> > (2) capricious,
> >
> > (3) an abuse of discretion,
> >
> > (4) unsupported by the evidence or

(5) in excess of statutory authority.

*Id.* (quoting *Uhlir v. Ritz*, 255 Ind. 342, 345-346, 264 N.E.2d 312, 314 (1970)). Also, "the trial court may not substitute its judgment for that of the agency below as 'the facts [are to be] determined but once.'" *Id.* at 619-620 (quoting *City of Mishawaka v. Stewart*, 261 Ind. 670, 677, 310 N.E.2d 65, 69 (1974)). We found that the absence of a transcript in that case did not require "a different interpretation of 'de novo,'" noting that "the Kollars had the burden to prove that the demolition order was unreasonable" and "were responsible for the presentation of evidence" and that "the supreme court has held that the trial court may review an agency's decision through either a 're-examination of the evidence upon which the administrative agency acted, or by the original reviewing court hearing evidence, depending upon the legislative scheme under which the agency operates.'" *Id.* at 620 (quoting *Warren v. Ind. Telephone Co.*, 217 Ind. 93, 117, 26 N.E.2d 399, 409 (1940)). Thus, we concluded that "it was appropriate for the trial court to rehear the evidence upon which the officer below made its decision." *Id.*

[23] Although it was Vega's burden to prove that the Board's action was arbitrary, capricious, an abuse of discretion, unsupported by the evidence, or in excess of statutory authority, and to present evidence, he was not required to produce the entire administrative record. Rather, he was required to present the evidence relevant to his theory of the case, the crux of which is that the Board's decision to order the demolition of the property before Saliga performed a re-inspection was arbitrary and capricious. To the extent that the court granted the

Appellees' motion at the close of Vega's case-in-chief because he did not present the entire administrative record, it erred in doing so.

[24] The Appellees also argued in their motion that Vega did not present evidence to dispute that the property located at 4839 Elm Street is an unsafe building in violation of Ind. Code §§ 36-7-9 or that "the Board's decision not to allow [Vega's counsel] and Mr. Vega a ninth continuance after two years of litigation" was arbitrary or capricious. Transcript at 153. An administrative decision is arbitrary and capricious only when it is willful and unreasonable, without consideration or in disregard of the facts and circumstances of the case, or without some basis which could lead a reasonable person to the same conclusion. *Fishburn v. Ind. Pub. Retirement Sys.*, 2 N.E.3d 814, 821 (Ind. Ct. App. 2014), *trans. denied*.

[25] The record reveals that, following the initial action by the Board in November 2014 ordering demolition of 4839 Elm Street, Vega by counsel moved the Board to grant relief, and it did so and reset a hearing for February 26, 2015. That hearing was again reset by agreement between the parties for April 30, 2015, in order to give Saliga an opportunity to re-inspect the property prior to a final hearing on the merits. In early March 2015, Vega's counsel sent via email and fax a letter to Saliga requesting to coordinate an inspection. The letter also indicated that Vega's counsel understood that Attorney Kantar would communicate with Saliga for help setting up the inspection. As the April 30, 2015 hearing approached, Vega's counsel requested another continuance, noting that he had not heard from Saliga "since the communications in early

March," that he had "put in a call to him Tuesday (4/28) but missed him by a couple-of-minutes," and that he hoped that Saliga's "schedule will permit us to coordinate something in May and, hopefully, have a 'sit-down' in June to see if it's resolvable." Appellant's Appendix Volume 2 at 29.

[26] At the Board's April 30, 2015 hearing, Kantar noted the requested continuance and observed that the matter "has been continued at regular intervals for over two years" and "doesn't ever seem to be going anywhere." Transcript at 122-123. She recommended that Saliga prepare an order of demolition for the Board to approve and that Vega could then "appeal it if he wants to. Enough is enough." *Id.* at 123. At the hearing, Saliga indicated to the Board that neither Vega nor his counsel had made an attempt to schedule the re-inspection. At a deposition conducted on June 12, 2015, however, Saliga admitted that he "misspoke" at the hearing and that he had in fact received correspondence from Vega's counsel to which he did not respond and that he had forgotten about that letter. Plaintiff's Exhibit 6 at 38.

[27] On this record, and viewing the evidence most favorable to Vega, we conclude that Vega has made a requisite showing that the Board's order was made without consideration or in disregard of the facts and circumstances of the case and was therefore arbitrary and capricious and that the trial court erred in dismissing Vega's complaint for judicial review at the close of his case-in-chief. At the very least, he has shown that both the Appellees and Vega agreed that a re-inspection of the property was warranted prior to a decision on the merits and that his counsel engaged Saliga to set up that inspection. Prior to the April

30, 2015 hearing, Vega's counsel asked for a continuance and proposed a short timeline for completing the inspection and examining whether the matter was resolvable prior to a final hearing, but this proposal was rejected at Kantar's recommendation. The dismissive attitude in taking final administrative action based primarily on delay rather than the merits of whether the property should be ordered demolished is exhibited by Kantar's statement to the Board that Vega could, following action by the Board, "appeal it if he wants to. Enough is enough." Transcript at 123. The court's order of dismissal is reversed and the matter remanded for further proceedings.

## *Conclusion*

[28] For the foregoing reasons, we reverse the court's order and remand for further proceedings consistent with this opinion.

[29] Reversed and remanded.

Vaidik, C.J., and Bradford, J., concur.