## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 12 2017, 8:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Mirjana Miletic
Crown Point, Indiana

ATTORNEY FOR APPELLEE

Adam J. Sedia
Hoeppner Wagner & Evans, LLP
Merrillville, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mirjana Miletic, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Michael J. O'Brien, <br> *Appellee-Defendant.* | December 12, 2017 <br><br> Court of Appeals Case No. <br> 45A03-1703-CT-513 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable John R. Pera, Judge <br><br> Trial Court Cause No. <br> 45D10-1411-CT-227 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Petitioner, Mirjana Miletic (Miletic), appeals the trial court's judgment on the evidence in favor of Appellee-Respondent, Michael J. O'Brien (Attorney O'Brien), in Miletic's claim for legal malpractice.

We affirm.

# ISSUE

Miletic raises three issues on appeal, one of which we find dispositive and which we restate as: Whether the trial court erred by entering a judgment on the evidence in favor of Attorney O'Brien.

# FACTS AND PROCEDURAL HISTORY

On August 21, 2004, Miletic married Dragan Miletic (Dragan). Miletic and Dragan separated in March of 2012. Miletic retained Attorney O'Brien to represent her in the divorce proceedings.

At some point, Miletic was diagnosed with breast cancer, and she suffers from a host of other medical conditions. While the divorce was pending, in May of 2012, Miletic filed a claim to receive supplemental security income due to a disability, and she was subsequently determined to be eligible for disability benefits in the amount of $710.00 per month. Conversely, in August of 2012, the Medicaid Medical Review Team determined that Miletic did not meet Medicaid's disability criteria.

[6]     In his Financial Declaration Form, completed in July of 2012, Dragan indicated that he was unemployed and receiving unemployment benefits. He was also maintaining health insurance on Miletic through COBRA. At some point before the parties' dissolution, it appears that he moved to California for new employment. On October 18, 2012, Attorney O'Brien filed a Verified Petition for Maintenance Due to Spousal Incapacity, requesting that Dragan pay to Miletic "a reasonable monthly maintenance, in addition to a continuation of the COBRA for a period of time the [c]ourt considers appropriate." (Appellant's App. Vol. II, p. 26).

[7]     On November 26, 2012, the trial court held a final hearing on the dissolution, during which Miletic and Dragan informed the court that they had reached an agreement on all issues. Specifically, the parties indicated that they had no real property, and they had already divided all personal property. Dragan agreed that he would maintain health insurance for Miletic until she completed treatment or obtained Medicaid. The trial court questioned Dragan regarding the provision of health insurance because it would be "a form of . . . [incapacity] spousal maintenance." (Appellant's App. Vol. II, p. 52). Dragan indicated that he was "[w]holeheartedly" agreeing to "pay directly for [Miletic's] insurance, as long as she needs it." (Appellant's App. Vol. II, p. 51). Miletic testified that she understood the terms of the agreement, that she agreed to it of her own "free will," and that she would abide by it. (Appellant's App. Vol. II, p. 57). The trial court instructed Attorney O'Brien to memorialize the

settlement agreement in a document to be signed by both parties and submitted to the court for a final decree.

[8] On April 10, 2013, Dragan notified the court that he had complied with the agreed-upon settlement and, at Attorney O'Brien's request, had signed and returned the formalized settlement agreement in January of 2013. However, he stated that Miletic had "terminated [Attorney O'Brien] and refused to sign the [s]ettlement [a]greement." (Appellant's App. Vol. II, p. 136). Thus, Dragan requested that the court fully implement the settlement as "decided at the final hearing on November 26th 2012." (Appellant's App. Vol. II, p. 136). On June 27, 2013, the trial court conducted a hearing and directed Miletic's new counsel to prepare and file a decree; this was never done. Thus, on September 6, 2013, the trial court issued a Final Decree of Dissolution of Marriage, relying on the parties' assertions during the final hearing. The trial court ordered that Dragan "shall provide incapacity spousal maintenance to [Miletic] by maintaining health insurance coverage for her until her current treatment is completed or until Medicaid accepts her." (Appellant's App. Vol. II, p. 20).

[9] On October 26, 2015, Miletic filed an Amended Complaint against Attorney O'Brien, alleging legal malpractice. Specifically, she claimed that Attorney O'Brien "failed to exercise reasonable skill in representing [her] that a reasonably competent attorney would do." (Appellant's App. Vol. II, p. 22). Miletic argued that, in the divorce proceedings, Attorney O'Brien "only asked for medical coverage or COBRA coverage" even though "[h]e was supposed to ask for monthly payments to be for spousal support due to [her] disability."

(Appellant's App. Vol. II, p. 22). Miletic further contended that, had Attorney O'Brien properly conducted discovery, he would have learned that her ex-husband was "earning over $164,000 per year,"[1] and she should "have gotten spousal maintenance or support as a result of [her disability] and [husband's] ability to pay same." (Appellant's App. Vol. II, p. 23). Accordingly, she "request[ed] [j]udgment against [Attorney O'Brien] in an amount that will compensate [her] for [her] damages which is a life[]time of spousal support [she] should have received if [Attorney O'Brien] had competently done his job." (Appellant's App. Vol. II, p. 23).

[10] On October 30, 2015, Attorney O'Brien filed a motion for summary judgment, which the trial court denied on March 11, 2016. On December 20, 2016, the trial court conducted a bench trial. At the close of Miletic's case, Attorney O'Brien moved for directed verdict. Based on its finding that Miletic had failed to meet her burden of proof, the trial court granted Attorney O'Brien's motion.

---

[1] It should be noted that, throughout this case, Miletic has repeatedly emphasized that Dragan earned $164,000 per year at the time of their divorce and, thus, clearly should have been required to pay maintenance. A review of the tax returns admitted into evidence indicates that Dragan worked for Kraft Foods Group during his marriage to Miletic, and for tax years 2004, 2007, 2008, 2009, 2010, and 2011, their joint gross income (derived from his earnings as she appeared to have been unemployed) averaged $68,134.67. Then, in 2012, Dragan lost his job and subsequently began new employment in California. According to the jointly-filed tax return for that year, Dragan earned $164,103: $106,850 from Kraft Foods Group and $33,780 from his new job. He also later filed an amended tax return to include $14,289 from a retirement account. Transcripts from the dissolution proceeding indicate that Dragan received a severance package from Kraft Foods. Thus, our court can infer that Dragan's increase in income in 2012 was attributable to the severance package from Kraft Foods Group and was not a reflection of his regular salary, contrary to Miletic's assertion. Moreover, the record establishes that Dragan equally divided his severance package with Miletic prior to the final hearing.

On January 19, 2017, Miletic filed a motion to correct errors, which the trial court denied on February 14, 2017.

[11] Miletic now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

[12] At the close of Miletic's case-in-chief, Attorney O'Brien requested a directed verdict (*i.e.*, a judgment on the evidence) pursuant to Indiana Trial Rule 50, which the trial court granted. However, a directed verdict is reserved for cases that are tried before a jury, and the instant case involved a bench trial. *See* Ind. Trial Rule 50(A). "The Indiana Supreme Court has noted that a court on appeal will address a trial court's ruling on a motion for directed verdict made at a bench trial as a Trial Rule 41(B) motion for an involuntary dismissal." *Vega v. City of Hammond*, 80 N.E.3d 904, 909 (Ind. Ct. App. 2017).

[13] Trial Rule 41(B) provides that

> [a]fter the plaintiff or party with the burden of proof upon an issue, in an action tried by the court without a jury, has completed the presentation of his evidence thereon, the opposing party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the weight of the evidence and the law there has been shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff or party with the burden of proof, the court, when requested at the time of the motion by either party shall make findings if, and as

required by Rule 52(A). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision . . . operates as an adjudication upon the merits.

Thus, "[a] Trial Rule 41 motion to dismiss tests the sufficiency of the plaintiff's case in chief." *Vega*, 80 N.E.3d at 909. On appeal, we review a ruling on a Trial Rule 41(B) motion for involuntary dismissal "under the clearly erroneous standard." *Thornton-Tomasetti Eng'rs v. Indianapolis-Marion Cnty. Pub. Library*, 851 N.E.2d 1269, 1277 (Ind. Ct. App. 2006). Accordingly, we will not reweigh evidence or assess the credibility of witnesses, and we will "reverse the trial court only if the evidence is not conflicting and points unerringly to a conclusion different from the one reached by the lower court." *Id.*

[14] Additionally, we note that Miletic is proceeding *pro se*. It is well established that *pro se* litigants "are held to the same legal standards as licensed attorneys." *Basic v. Amouri*, 58 N.E.3d 980, 983 (Ind. Ct. App. 2016). *Pro se* parties must "follow the established rules of procedure and must be prepared to accept the consequences of their failure to do so." *Id.* at 983-84. Our court "will not become an advocate for a party, or address arguments that are inappropriate or too poorly developed or expressed to be understood." *Id.* at 984 (internal quotation marks omitted).

## II. *Legal Malpractice*

[15] Miletic claims that Attorney O'Brien committed legal malpractice during his representation of her in the dissolution proceedings. She argues that she presented ample evidence of his negligence during her case-in-chief, proving

that Attorney O'Brien "failed to do discovery to prove what [Dragan] earned," which ultimately prevented Attorney O'Brien from "prov[ing] a maintenance case" at trial. (Appellant's Br. p. 14). Accordingly, Miletic maintains that the trial court erred in granting Attorney O'Brien's request for judgment—*i.e.*, involuntarily dismissing her claim based on the weight of evidence—and now requests that our court reverse the trial court's decision and order Attorney O'Brien to "compensate [her] for a lifetime of [s]pousal [s]upport." (Appellant's Br. p. 14).

[16] It is a basic tenet "of professional conduct that an attorney must faithfully, honestly, and consistently represent the interest and protect the rights of his client, and that he is bound to discharge his duties to his client with the strictest fidelity, to observe the highest and utmost good faith, and to inform his client promptly of any known information important to him." *Barkal v. Gouveia & Assocs.*, 65 N.E.3d 1114, 1119 (Ind. Ct. App. 2016). In Indiana, an attorney is generally expected "to exercise 'ordinary skill and knowledge.'" *Id.* Therefore, to succeed on a claim of legal malpractice, Miletic was required to establish: "(1) employment of the attorney (the duty); (2) failure of the attorney to exercise ordinary skill and knowledge (the breach); (3) proximate cause (causation); and (4) loss to the plaintiff (damages)." *Id.* Whether an attorney exercised due care and diligence in representing a client—*i.e.*, whether an attorney breached his duty—ordinarily "requires expert testimony to demonstrate the standard of care by which the . . . attorney's conduct is measured." *Id.* at 1119-20 (internal quotation marks omitted). As for causation

and the extent of the client's harm, the plaintiff must show that, but for the attorney's negligence, "the outcome of the underlying litigation would have been more favorable." *Id.* at 1119.

[17] In granting Attorney O'Brien's motion for directed verdict, the trial court stated:

> First of all, I want to say that no one could—no judge could live with this case as long as I have, it having been filed over two years ago, and both sides being in front of me on any number of occasions, and not feel sympathy towards you, Ms. Miletic. You're in a situation in your life which is not very—not very good, and I understand that. But what you've asked the [c]ourt to do is to place responsibility for your situation on the shoulders of [Attorney] O'Brien. And I told you months, and months, and months ago, and advised you of the perils—do you know what I mean by that word, perils—of representing yourself in—in a case, this is not a small claims court, I have to hold you to the same standard I would if you were a lawyer . . . that had gone to law school and had been well-trained, and well-educated, and well-schooled in what the law requires. At the end of the day, I've taken an oath to uphold the law and to follow the law. I can't make things up as I go along. And even though I have the upmost sympathy for you, and for the situation you're in, it is your obligation to prove to me by the greater weight of the evidence that [Attorney] O'Brien did something he shouldn't have done or failed to do something that he should have done— that's called negligence in the law—and that as a result of his negligence, you were harmed. The only way that I can make that determination is through expert testimony, testimony from a lawyer, here, who would tell me what he failed to do or tell me what he did do that he shouldn't have done. You've not presented me with any expert testimony this morning concerning [Attorney] O'Brien's alleged negligence. And because of that, there is a failure of proof on your part to hold him accountable

for anything that you claim he did to you or failed to do for you. Knowing I have to be faithful to the law, I have to rule in [Attorney] O'Brien's favor, not because I'm unsympathetic to your plight or that I think that he—he did represent you appropriately. I don't know that. I don't know whether he did or he didn't. . . . [I]n order to prove your case, you have to have an expert, a lawyer, come in and testify to that. What you're really asking me to do is to act as that lawyer for you. . . . So, I'm finding in favor—I'm granting the motion for directed verdict. I'm finding in favor of [Attorney] O'Brien because of the failure of proof on your part.

(Tr. pp. 53-55).

[18] Miletic now asserts that the trial court's decision was erroneous because expert testimony was unnecessary; she posits that her "case is so obvious that even a child can tell it was negligence." (Appellant's Br. p. 16). Despite the requirement of expert testimony in legal malpractice cases, there is an exception if "the question is within the common knowledge of the community as a whole or when an attorney's negligence is so grossly apparent that a layperson would have no difficulty in appraising it." *Storey v. Leonas*, 904 N.E.2d 229, 238 (Ind. Ct. App. 2009), *trans. denied*. Here, Miletic argues that, at the time of her dissolution, Attorney O'Brien knew that she was sick, disabled, and unable to work or provide for herself. She further contends that, at the onset of her case, she instructed Attorney O'Brien to seek a spousal maintenance award, "and he had a duty to use reasonable care and skill in pursuing that claim." (Appellant's Br. p. 21). Instead, she maintains that Attorney O'Brien "breached

his duty to at all times protect and preserve [her] property." (Appellant's Br. p. 22).

[19] On the other hand, Attorney O'Brien argues that Miletic has waived her right to rely on the common knowledge exception because she did not assert that expert testimony was unnecessary to demonstrate Attorney O'Brien's negligence until her motion to correct errors. "A party may not raise an issue for the first time in a motion to correct error or on appeal." *Troxel v. Troxel*, 737 N.E.2d 745, 752 (Ind. 2000). Notwithstanding any waiver, Miletic's claim fails on the merits.

[20] It is well established that the common knowledge exception "is very limited and applies solely in cases of obvious and transparent malpractice." *Barkal*, 65 N.E.3d at 1122. Here, we are unable to find such obviousness and transparency in Attorney O'Brien's alleged malpractice. Per his client's request, Attorney O'Brien filed a motion for spousal maintenance, seeking both monetary payments and the provision of health insurance. Apparently, by the time of the final hearing, Miletic and Dragan settled the maintenance issue. In her brief, Miletic fails to address the fact that, at the final dissolution hearing, she affirmed to the trial court that she understood and agreed with the settlement arrangement reached by the parties, which included a provision of spousal maintenance solely in the form of health insurance.[2] The trial court expressly

---

[2] Miletic does cite to her own testimony from the malpractice hearing, wherein she indicated that prior to the final dissolution hearing, Attorney O'Brien met privately with Dragan and decided on the issue of health insurance in her absence, and then during the final hearing, Attorney O'Brien instructed her "to 'just shut up

"accept[ed], adopt[ed], and approve[d] the parties' settlement agreement."
(Appellant's App. Vol. II, p. 57). Our court is not privy to the negotiations that
preceded the settlement, and it is unclear as to what occurred following that
hearing such that a written version of the settlement agreement was never
submitted to the trial court. Nevertheless, there was no attempt to repudiate the
settlement, and the trial court explicitly relied on the parties' in-court averments
in drafting the dissolution decree with the limited spousal maintenance award.
Accordingly, because Attorney O'Brien's purported negligence is not, as Miletic
essentially asserts, "so grossly apparent that a layperson would have no
difficulty in appraising it," the common knowledge exception does not apply.
*Barkal*, 65 N.E.3d at 1122. Therefore, expert testimony was required to
establish whether Attorney O'Brien breached the applicable standard of care.
The trial court did not err in dismissing Miletic's legal malpractice claim based
on her failure to establish the elements of her claim.[3]

# CONCLUSION

Based on the foregoing, we conclude that the trial court did not err in granting
judgment to Attorney O'Brien—*i.e.*, dismissing Miletic's legal malpractice

---

and say yes to my question.'" (Appellant's Br. p. 12). However, this is in stark contrast to her testimony that
she knowingly entered into the settlement agreement of her own free will.

[3] Miletic also raises an issue concerning the trial court's refusal to allow her to testify from her notes and an
issue regarding the trial court's exclusion of a "demonstrative exhibit," "which was a time line summarizing
[her] exhibits." (Appellant's Br. p. 23). We find that Miletic has waived both of these issues based on her
failure to develop a cogent, well-reasoned argument with appropriate citations to authority. *See* Ind.
Appellate Rule 46(A)(8)(a).

claim—based on Miletic's failure to meet her burden of establishing a right to relief.

[22] Affirmed.

[23] Baker, J. and Brown, J. concur